LEWISBURG & NORTHERN R. R. Co. *v.* R. M. DUDLEY.

*(Nashville.* December Term, 1929.)

Opinion filed July 19, 1930. Petition to rehear denied December 13, 1930.

E. T. SEAY and J. M. ANDERSON, for plaintiff in error.

PITTS & McCONNICO and O. M. GOLDEN, for defendant in error.

Mr. Justice Cook delivered the opinion of the Court.

This is a proceeding, under the statutes, to appropriate land for a railroad right-of-way. The trial in the circuit court was before the judge without a jury. The plaintiff contended that the land taken for the right-of-way was confined to a detached lot 50 by 195 feet purchased by defendant from George C. Waters September 26, 1911, to support a claim for incidental damages to another tract of 29½ acres; and that he cannot recover incidental damages to the larger tract because the lot bought from Waters was separated from the other land by a 40-foot street and because the land taken was not a part of the other tract, was not in common use with it, and was acquired on the eve of condemnation as the foundation of a claim for incidental damages. These defenses raised an issue of fact. Responding to the issue, upon request in writing made under section 4684 of Shannon's Code, the trial judge found:

"That the defendant Dudley had been using said 29½ acres and also the above described lot after he acquired it on September 26, 1911, as a country home, and for the purpose of developing and beautifying a large spring located on the premises, known as Pioneer Spring, and that all of said land was held and used for said common purposes to which purposes this land was well adapted."

And further: "That Dudley did not know and could not have known that the road would be actually constructed across the lot, . . . and therefore did not purchase it . . . for the purpose of fabricating a claim for incidental damages."

The trial judge also found that defendant Dudley owned a fee in the 40-foot street, the western half of which, together with the 50 by 195 foot lot, was taken

by the plaintiff for the railroad right-of-way. There is evidence to sustain the theory of plaintiff and also evidence rebutting it.

The reviewing court can only look to the record for the purpose of ascertaining whether or not there is evidence to support the trial judge's finding of fact. *Hill Fontaine & Co.* v. *Alexander,* 16 Lea, 426; *Hinton* v. *Insurance Co.,* 110 Tenn., 130; *Louisville Property Co.* v. *Mayor, etc.,* 114 Tenn., 213; *Insurance Co.* v. *Witherspoon,* 127 Tenn., 363.

There is material evidence to support the legal conclusion dependent upon the facts as found by the trial judge. 10 R. C. L., section 138, p. 157.

After finding that the 50 by 195 foot road was owned and used by defendant in common with the contiguous 29½ acres, the trial judge held plaintiff liable for the land appropriated and for incidental damages to the adjacent tract. The facts and circumstances, upon which the incidental damages depend, are not shown by proof, and upon that feature of the case the trial judge made no finding of fact. He rested his legal conclusion upon a stipulation. It was agreed, without qualification, that $400 was the value of the land taken, and upon that unequivocal agreement a judgment for $400 could be rendered.

The stipulation concerning incidental damages contains no statement of facts showing special circumstances that would bring the case within exceptions to the general rule of fixing incidental damages. And as to this the agreement is narrowed to the legal concepts of opposing counsel. Plaintiff insisted that the law limited the incidental damages to depreciation of the remaining land, resulting from proper construction and operation

of the railroad over the part of the premises actually taken, leaving out of view all damages resulting to the remainder from the proper operation of trains over the road before they reach the land taken and after they leave it. Under this view it was agreed that the incidental damages should be assessed at $3,000.

The defendant's insistence extended the foregoing rule to include as an additional element of damages depreciation caused by the ordinary operation of trains, not only over the land taken but while they were approaching and after they left the land taken, and it was agreed that if this rule governed that the incidental damages should be assessed at $10,000.

This extended rule, which is an exception to the general rule, is not applied without proof showing that the use of the part taken is attended by specially injurious circumstances peculiarly affecting the value of the remaining land.

The trial judge fixed the value of the land taken at $400, and, without finding specially injurious circumstances affecting the value of the remaining land, he adopted the defendant's conception of the law and assessed $10,000 as the incidental damages. The Court of Appeals, adopting the other view as being the law applicable to the admitted facts, reduced the judgment to $3,000 and apportioned the costs.

The action of the Court of Appeals is challenged through assignments of error accompanying petitions for certiorari on behalf of both parties. Plaintiff insists that there is no evidence to authorize the assessment of any incidental damages and defendant insists that the Court of Appeals erroneously limited the damages to $3,000.

For sake of clarity we omit quotations from the many authorities cited and relied on by opposing counsel to support their respective positions. The cases are necessarily dependent upon their peculiar facts and are controlling only to the extent that the legal principles involved are applicable to the case under consideration.

The general rule for assessment of incidental damages is that the injuries to the residue of a tract, part of which is taken, which will entitle the owner to compensation, are such as specially affect him and not such as are suffered by the community generally, or such as differ only in degree and not in kind from those suffered in common by the people of the whole neighborhood. 20 C. J., 677.

The rule is extended upon facts proven and which show that exceptional circumstances attend the taking and use of the land which impair the value of the remainder, and so if the use of the part taken is attended by peculiar facts and circumstances, that result in special injury to the remainder of the land, the fact that such special injury is common to all property in the community would not exclude consideration of the special injury as an element to be considered in assessing the incidental damages. For instance, if the use of the land taken is accompanied by a peculiar danger, fear of which operates to injuriously affect the market value of the remaining land, the owner of the land taken would not be postponed as would those whose lands are not taken but suffer in common from the menace, until the culmination of the danger. The immediate effect is to impair the value of the remaining land by the act of taking a part of it, and for this injury he may recover incidental damages.

As said in *Railroad* v. *Moriarity,* 135 Tenn., 446, after referring to cases quoted, the right to recover exceptional damages is made to depend on the speciality or peculiarity of the injury.

In our case of *Alloway* v. *Nashville,* 88 Tenn., 510, where the dangerous proximity to the remainder of the land, of a reservoir built upon the part taken, was an element considered in assessing incidental damages, because, though the danger was common to an entire community, it resulted directly from the act of taking a part of the tract on which the reservoir was built and its location there specially affected the value of the remainder. It was a taking and peculiar use that operated injuriously upon the remainder of the land and so might be included as an element of incidental damages.

It is always under some exceptional circumstances that the extended or exceptional rule is applied. The many apparently conflicting authorities throughout the country indicate the difficulty of determining where special damages overlap general damages, and in that connection the difficulty of excluding injury that results from the taking for which damages are allowable, and general injury and general benefits that result from the public improvement and which cannot be considered in the determination of incidental damages.

The difficulty is not encountered in *Railroad* v. *Hinds,* 134 Tenn., 293, for the issues were clearly defined. The trial judge confined the measure of damages, general and special, to the injury resulting from the act of appropriation, and from the use of the land taken, and instructed the jury to allow as an element of incidental damages to the remainder of the land the impairment caused by "necessary danger and peril from sparks or fire from

trains while on said strip, and necessary noise, smoke, soot, cinder, escaping fumes, gases and vibrations so resulting, as well as inconvenience to ingress and egress.''

The railroad challenged the instruction, and its accuracy was the question presented for determination by the court. As a prelude of the opinion approving it, Chief Justice NEIL clearly stated the contending theories of opposing counsel as follows:

''The parties widely differ in their theories. The defendants claim that any injury which directly causes depreciation in the market value is a damage within the true sense and scope of the right vouchsafed by law to recover compensation for injuries inflicted by the erection of a public improvement on part of the land of an owner.

''Plaintiff insists that in order to arrive at the nature of damages peculiar to the land involved, we are bound to exclude damages similar in nature to those suffered by mere adjacent owners, no part of whose land has been taken, and that this would exclude mere propinquity of the railroad, damage of fire, noise, smoke, cinders, dust, and vibration; that these are general damages as distinguished from special damages, and therefore necessarily excluded from consideration.''

And further that incidental damages can be such only as are caused by the construction of the road as distinguished from those caused by its operation:

''The reply of defendants is twofold: First, that the claimed discrimination does not exist, since, as they assert, mere adjacent owners are entitled to the same kind of damages, for the same kind of injuries, at least for noise, smoke, cinders, dust, and vibration; secondly, that the term 'general damages' embraces only those incon-

veniences which impair personal comfort and enjoyment as distinguished from those invasions which affect the use and value of land, instancing, among the former, the ordinary noises created by the operation of the improvements which offends the ears of all, whether they own and reside upon land in the neighborhood or not; as, for example, the noise caused by the rumble of trains, the rattle of vehicles on the paved streets of a city, noise of passing street cars, and the smoke of distant factories.

"So, it is obvious that the defendants take their stand upon the broad proposition that every direct impairment of the market value of the land left after a part of the whole tract has been taken, caused by the installation and nonnegligent operation of the improvement, must be considered as an item of incidental damages, and be compensated for as such; while the plaintiff's contention is that the impairment of market value is not a true criterion, but the loss must arise from some physical, observable fact, or facts, special and peculiar to the land so left, as differentiated from other tracts or lots through which, or near to which, the improvement is located and operated."

After a comprehensive review of authorities and a statement of general principles, the court approved the instruction given by the trial judge, which plaintiff had assailed as erroneous, and stated the rule for assessing incidental damages in these words:

"In estimating the extent of lessened value of the land left after appropriating a part, that is the damages so called, it is proper to consider the danger of fire, the annoyance that will probably occur from noise, smoke, cinders, dust, or noisome odors or vapors from engines, and the jarring caused by the passing of trains upon the track over the land taken,"

Discussing damages in such case, the opinion proceeds:

"The word 'damages' as used in condemnation cases does not mean a sum of money, exacted by retributive justice for a legal injury inflicted, but purchase money for property taken, pursuant to law, for the use of a public improvement, and compensation for the loss in value incidentally imposed upon the residue of the tract as a consequence of the taking of a part."

Pursuing this thought, it is suggested in the opinion that the courts are required to determine compensation as if the condemnor and the landowner were dealing as buyer and seller on a contractual basis, with the fair market value of the land, as the consideration for land taken and damages to the remainder. If the courts, acting for both parties, are to be guided by contractual consideration in determining compensation for the land taken and the land injured, they could not properly enhance the condemnor's incidental damages resulting from the exercise of the power granted by the State, that is, damages resulting from injury caused by the ordinary movement of trains elsewhere than on the land taken and common to the community, and sometimes referred to as *damnum absque injuria,* any more than they could diminish the landowner's compensation by subtracting incidental benefits which he may share in common with other landholders in the community.

█ The stipulation and finding of facts disclosed no unusual circumstances attending the ordinary movement of trains on the property of others to take the case out of the general rule. In the absence of special circumstances attending the operation beyond the limits of the land taken, damages resulting from such careful use of the powers conferred by the State, and suffered in com-

mon by all persons along the road, cannot be included as an additional element of incidental damages.

The incidental damages are such only as result from the taking and arise from operation of the railroad over the land taken. The Court of Appeals so found.

It is stipulated that incidental damages resulting from the act of taking and from the operation of trains over it is $3,000. There is no evidence to authorize an addition of the exceptional damages claimed by defendant. Interest will be allowed on the recovery from November 25, 1911, the date provided in the stipulation.

The judgment of the Court of Appeals apportioning the costs is not authorized by any fact appearing in the record and should be modified so as to tax plaintiff with all the costs.

As modified, the judgment of the Court of Appeals is affirmed.