STATE OF TENNESSEE ex rel. DAVID M. PACK, Commissioner, Department of Highways of the State of Tennessee, Petitioner, v. MRS. OTTO (Tollie) HILL, Defendant.—408 S.W.(2d) 213.

Western Section at Jackson. March 11, 1965.

Certiorari Denied by Supreme Court July 6, 1965.

James D. Senter, Jr., Humboldt, for appellant.

Ashley, Malone & Ashley, Harrell & Nowell, Trenton, for appellee.

AVERY, P.J. (W.S.). This is a condemnation suit filed by the State of Tennessee to acquire an area for the right-of-way for the construction of a by-pass of the town of Trenton on Highway 45W, crossing Highway 104, and reentering highway 45W, for which right-of-way the State had appraisals and paid into Court $3,250 in accord with T.C.A. Section 23-1528 et seq., over the lands of respondent-defendant, Mrs. Otto (Tollie) Hill.

45W runs generally northwest and southeast. This by-pass involved is located generally in a northeasterly direction from the original 45W as the by-pass circles around the Town of Trenton in that direction, and crosses Highway 104 which traverses the heart of the Town of Trenton. From Trenton this Highway 104 extends east to Milan and west to Dyersburg. The distance of this by-pass is not relevant, however, it extends from its east exit from 45W, east of central heart of Trenton in a northwesterly circular direction along the Old Jackson-Trenton Road crossing State Highway 104, and reenters Highway 45W some distance west of Trenton. The area here involved lies along the Old Jackson Road and east of Highway 104.

The entire involved tract containing about 59 acres marched with the east side of the Old Jackson Highway its entire length of about 2425 feet. This by-pass crosses the Old Jackson Road at about 1600 feet from the southwest corner of this tract of land, and the southwest boundary of the tract about 825 feet from its northwest corner, cutting off from the main remaining portion of the respondent's land, along that Old Jackson Road, containing about 2.90 acres between the by-pass and the Old Jackson Road.

3.53 acres are embraced in the highway by-pass. The dwelling and barn, both in a dilapidated condition, are located on the 2.90 acres. No one lives in the residence except some elderly gentleman who occupies just a part of it as a sort of charity shelter.

A plat identified as Exhibit 1 of the petitioner, shows how this tract is affected by the by-pass. It is known as tract No. 12, and so is this roadway with 3.53 acres, together with the non-access area and the little tract cut

off containing 2.90 acres, leaving approximately 52.57 acres in the tract on which there is no barn or residence.

The case was tried before the Court and jury on exceptions to the value, fixed under the provisions of T.C.A. Sections above referred to, and there was a jury verdict in favor of the owner of the land for the value of land taken of $4,250 and for incidental damage to the remaining lands, less any incidental benefits, of $6,500.

The proof by witnesses for the landowner is shown in the record to be about as follows:

| | |
|---|---|
| Mr. Ed Hamilton, value of land | $3,600. |
| Incidental benefit off-set incidental damages. | |
| Lyle Putman, value of land taken | $6,000, |
| estimated incidental damage | 19,000 |
| Happel Hunt, value of land taken | $7,000 |
| estimated incidental damage | 7,000 |
| Mrs. Otto Hill, value of land taken | $10,000 |
| estimated incidental damage | 20,000 |
| Glen Hurt, son-in-law of Mrs. Hill, | |
| Value of land taken | $10,000 |
| Estimated incidental damage | 15,000 |

The method in which Mr. Hamilton was examined and the manner in which he testified, appears to this Court that whatever he may have said about incidental damages, he contradicted himself in two or three ways. He positively testified that in his opinion the incidental damages were off-set by incidental benefits. He said this more than once during his testimony. The valuation put upon the land taken by Mrs. Hill, the owner of the land, and by Mr. Glen Hurt, her son-in-law, each of whom fixed

the value of the 3.53 acres taken, at $10,000, is so far out of line with the highest figure of the value of the land taken, as testified by the disinterested witnesses, Mr. Hamilton, Mr. Putman and Mr. Hunt, that but little, if any, consideration can be given it, though apparently Mr. Hurt qualified to the satisfaction of the trial Court, as a competent witness to value land, and by law Mrs. Hill is made a competent witness.

For the purpose of this opinion the real values which we consider proper for us to even relate, are those of the witnesses for the landowner, who are Hamilton, Putman and Hunt. The combined total of the three evaluations by these witnesses would be $16,600 for the land taken, and on the basis of an average valuation of disinterested witnesses we have an average estimated value for that acreage of $5,533, or approximately $1,600 per acre.

These witnesses for the land owner fixed incidental damages as hereinafter set out, with the exception of the witness, Mr. Hamilton, and his testimony, as is said, is susceptible to different interpretations, so we have the following figures on incidental damages by Mr. Putman of $19,000; by the witness Happel Hunt, as we understand his evidence, of $7,000; Mrs. Otto Hill $20,000 and Mr. Glen Hurt of $15,000.

In arriving at these figures which we show in this opinion, we have tried to take into consideration what these witnesses said about the values before and after taking the area for the road, of the whole 59 acres, and the value of that which is left. So if we give consideration to what has been said by Mr. Lyle Putman and Mr. Happel Hunt, we have a combined figure of $19,000 and $7,000 or $26,000 incidental damages. It is tremendously doubtful that Mr. Putman meant to fix any such incidental damage figure at

$19,000, and perhaps meant that figure to include value of land taken and incidental damage. However, the average of these two would be $13,000 for the incidental damages.

It is our opinion all of these witnesses testified as though there was a ready market value for every lot that could be cut out of the whole 59 acres, at the present time, and as though there were gravel roads, water and everything else laid out within it. We doubt seriously if any fair and reasonable figure could be arrived at in that manner. We have given no consideration to the incidental damage figures set by Mrs. Hill and Mr. Hurt, for it appears to us that the verdict of the jury was such that they gave no consideration to them whatever, neither as to the value of the property as a whole, nor the value of the remaining property as fixed by Mr. Hurt, or to any figure of incidental damages that either of them gave. They saw these witnesses and heard them testify.

Now opposed to these figures we have the values of land and the estimate of incidental damages, as fixed by three witnesses that testified for the State. Mr. Harry Searl fixed the value of the land taken at $500.00 per acre or $1,765. He fixed the incidental damages and explained why he did so, at $1,500. Mr. Marion Holmes fixed the value of the land taken at $1,412. He fixed the incidental damages at $1,768.16. Mr. Robert Freeman fixed the value of the land taken at $1,765 and explained how he did that, and he fixed the incidental damage at $1,593.63, an average of $1,645, this approximates $500.00 an acre. For the average values of incidental damages of these three witnesses same is approximately $1,883.

It has been our experience that there is no way to relate the jury verdict to the testimony of witnesses in such cases. The estimates of witnesses are so far apart, both

as to values of land and incidental damages, after you examine carefully every particle of the proof, that the Courts are left to somewhat speculate how the jury in this, or any of the other similar cases we have had before us, arrived at their verdicts.

Both parties saved exceptions to the verdict of the jury with respect to the value of the land and with respect to the amount of incidental damages.

Both motions for new trial were overruled, but upon that part of the motion for new trial by the State of Tennessee which alleged the verdict excessive, the Court saw fit to and did order a remittitur on the $4,250 verdict for the land taken, of $1,779, which was accepted under protest, and refused to grant a new trial, overruling all grounds of the respective motions.

The defendant accepted the remittitur under protest, and on appeal, assigning error only that the Court erred in directing this remittitur, is hereinafter quoted.

Petitioner perfected its appeal in error after the Court approved the verdict of the jury on the basis of the ordered remittitur, and has filed in this Court the following assignments of error, in substance:

ASSIGNMENT NO. ONE is in two parts, which simply states in the first part, ''There was no credible evidence to support the verdict of the jury'', and in the second part that the ''evidence preponderates against the verdict of the jury.''

ASSIGNMENT NO. TWO is in two parts. The first part simply is that, ''the verdict of the jury is excessive,'' and the second part is that the verdict of the jury is ''so grossly excessive as to indicate passion, prejudice or caprice on the part of the jury.''

The reason for this assignment is said, in effect. to be that the values fixed are "beyond the range of reasonableness."

ASSIGNMENT NO. THREE is that the jury having found no value of incidental benefits or of special benefits to off-set the incidental damages, the Court erred in affirming the verdicts.

ASSIGNMENT NO. FOUR is levelled at the evidence given by the witness Ed Hamilton on behalf of respondent over the objection of the petitioner, because as stated in the assignment, his testimony was related to lot values.

ASSIGNMENT NO. FIVE is to the affect that the Court erred in receiving the verdict without having inquired whether or not the jury found any incidental or special benefits to off-set the incidental damages, nor the amount thereof, if any.

ASSIGNMENT NO. SIX is levelled at the action of the Court in charging that Special Request No. 1 of the "Defendant". The substance of that request will be set forth in this opinion.

ASSIGNMENTS NOS. SEVEN, EIGHT, NINE and TEN are levelled at the action of the Court in refusing to charge petitioner's Special Requests Nos. One, Two, Three and Four, respectively, which requests will be further referred to herein.

The Assignment of Error on behalf of the appellant-respondent, Mrs. Hill, is contained in the following statement:

"The trial Court erred in ordering a remittitur of $1779.00 of the jury verdict of $4250.00 for the value of the land taken."

In 202 Tenn. 9, 301 S.W.2d 905, Chief Justice Burnett has said in the case of Davidson County Board of Education v. First American National Bank, Trustee:

"In this State we have adopted the view that 'value in view of all available uses' (Alloway v. City of Nashville, [88 Tenn. 510, 13 S.W. 123, 8 L.R.A. 123,] supra) is the proper phrase to use in valuation as against phrase 'value for the best use' as is used by the minority of the States. We are bound by the majority view, that is that we consider the 'value in view of available uses'. It is well said that we use this phrase to warn the jury against awarding the 'value for a particular use'. In Conness v. Commonwealth, 184 Mass. 541, 69 N.E. 341, that Court said:

'The sum to be awarded for real estate taken is the fair market value of the property, having reference to all the uses to which it is adapted. Its value for any special purpose is not the test, although it may be considered, with a view of ascertaining what the property is worth in the market for any use for which it would bring the most'."

Justice Burnett then quotes from the author of Orgel On Valuation, Section 30, p. 146, this statement:

" 'The courts are unanimous in admitting testimony on the adaptability of property for this use and for that, save for the familiar restrictions against the consideration of highly 'remote and speculative' contingencies. But it has been *held in most cases that a witness may not himself translate the adaptability into a statement*

*of its money value.* A properly qualified witness may express an opinion that the property has a 'fair market value' of $10,000, and he may explain, both on direct and on cross examination, the particular qualities of the property which lead him to conclude that it is worth this amount. But he is not ordinarily permitted to testify that the property 'has a value of $10,000 *for building lot purposes' or 'for the best use'*.'' (Emphasis added.)

The first above emphasis explains why Hamilton's evidence in this record can not be reconciled with the law governing such procedure.

Justice Burnett then made specific reference to the Alloway case, 88 Tenn. 510, 13 S.W. 123, which is a decision over 50 years of age, and to Orgel On Valuation, page 149, and again quotes:

'' '* * * the apparent aim of the courts in employing the 'all available uses' formula is to avoid overvaluation by preventing the jury from giving excessive weight to the value for the purposes for which the property is being condemned'.''

In this case of Davidson County Board of Education v. First American National Bank, Trustee, there is a full treatise of the position that our Courts have taken throughout the years. That case had been tried in the lower Court and carried, by appeal, to the Court of Appeals of the Middle Division. There this question of ''subdivision purposes'' was one of the principal issues in the trial Court, when one of the witnesses undertook to introduce a map showing a subdivision with lots as if laid out upon a piece of property. The lower Court had ruled that out and the Court of Appeals acting upon that

as an assignment of error by the landowners, had held to the contrary. Justice Burnett in his opinion at page 19 of 202 Tenn. at page 909 of 301 S.W.2d said:

"The Court of Appeals obviously was in error when it said: 'We also think that the expert witnesses should have been permitted to testify about, and the jury should have been allowed to consider their testimony, involving all the elements that entered into their respective estimates of value of the land taken, as well as incidental damages and/or benefits to the remaining land, based on its present or prospective highest and best use, which, in this instance was shown to be for subdivision into lots for residential purposes.'"

In that case the jury had off-set the incidental damages by incidental benefits, having held that the incidental benefits were equal to the incidental damages. They did not value the incidental benefits and did not value the incidental damages. In that case the evidence introduced as to the value of the property ranges from $64,600 down to around $30,000. Under authority of that case, if we hold in the instant case that this jury was unduly influenced by the fact that this lot question was improperly brought into the case, and that the jury fixed its verdict upon the question of lot value, we would most certainly have to reverse.

When the parties announced ready and with the jury out of the room, counsel for the landowner had made some statement about a map that they proposed to introduce. Each of counsel had made a considerable preliminary statement before the jury, and by consent of the parties, a great many of the pictures that now appear in this record as exhibits, along with certain of the plats and drawings, were permitted to go into the record and they

are marked as exhibits of the respective parties. They do not show to be exhibits to the testimony of certain witnesses. When counsel for the property owners had made some statement about what they proposed to introduce in the form of plats, counsel for the petitioner, in addressing the Court, said:

"MR. SENTER: May it please the Court, I believe there is probably going to be an attempt to introduce an exhibit. We think it would be a good idea to take that as a preliminary matter outside the presence of the Jury because it is going to have to be argued.

"THE COURT: Do you want to do that now?

"MR. SENTER: You are planning to introduce that?

"MR. HARRELL: Yes.

"THE COURT: Gentlemen, wait for me in the Jury room until we call you back, please.

"MR. HARRELL: If Your Honor please, we wanted to introduce a map that is drawn to scale exactly like they have there except it's on a much larger scale where it can be written on and we have two scales; have drawn, also, the certain dimensions, just marked off. We have a witness that we propose to introduce that through for whatever it is worth. In other words, it is every bit drawn to scale, exactly a duplicate of this here, except we are saving the trouble of having to figure out of every one. (This evidently means every lot)

"We have had this scale drawn off and marked here a certain number of feet along there so the witnesses can identify it or refer to it in any way they want to.

"MR. SENTER: May it please the Court, I may be anticipating something, but assuming as I am assuming, there is no actual subdivision plot; that there was no actual subdivision plot and that this property was not divided into lots at the time of the filing of the petition, and that this is something that is purely anticipatory and imaginative. We object to its introduction as a plot.

"As authority, I am sure you are familiar with Davidson County Board of Education against First American National Bank, 20 Tennessee 301 Southwest Second, 905. We would like to quote an excerpt from that opinion. This was exactly the same sort of situation.

"THE COURT: I don't believe that would be admissible in the form you are undertaking to show it. You are undertaking to show lots designated on the right-of-way they are taking, and the value of the individual lots."

It is obvious from that statement of the Court that the Court had seen the plat and must have surely known what it showed, and in response to that statement, counsel for respondent said:

"MR. HARRELL: No, sir, more or less to show the amount of land area that had a potential.

"In other words, here is the old Jackson Road, indicating). The witness could take a scale and measure it off but we have run the scale there and marked out so many feet there that is adjacent to that, adjacent to the new road, and here is the road that they have condemned out there. We have marked on that 1, 2, 3,— shown how many feet that was taken."

At that point counsel for petitioner and for the land-owner evidently were somewhat aggrieved at the attitude of each other.

Mr. Senter, then explained that part of the opinion by Justice Burnett in the case of Davidson County Board of Education v. First American National Bank, supra, which reversed the Court of Appeals, and read therefrom:

"It had not been plotted or subdivided into building lots with roads, etc., through it prior to the time that it was taken. The plat was objected to (objection was sustained in the trial court) was prepared by an engineer witness in the lawsuit and was prepared for the admitted purpose of illustration and persuasion in connection with these condemnation proceedings. All the witnesses on behalf of the landowner who were experts on subdivisions, the sale of land, geared their testimony to this plat and to the conception that this subdivision which was not in existence prior to the taking of the property by the school, was subdivided into lots."

"Its location and the history of the surrounding area was taken into consideration and was offered as evidence before the jury by both sides. The conflict of course comes wherein the property owner attempts to introduce this map and to hinge its proof on the value of this piece of land purely for the one purpose as that of a subdivision. In so doing we think that this is not admissible."

Argument continued, and finally the Court said:

"I will rule on that when we get to it gentlemen. There will be a question as to whether or not it is admissible."

Argument of counsel followed, the jury was returned and the first witness called, a Mr. Thomas B. Jeter, who qualified as a licensed surveyor. At a point in his testimony he was asked by counsel for property owner:

"Q—At our request, Mr. Jeter, did you draw to scale a drawing from the official drawing of the state; in other words, on a bigger scale where you can see it a little more.

A—Yes, sir.

Q—Just state what that is and if all of this is to scale?

A—Yes. I drew this on a scale twice as large as the State Highway map and it's drawn to a scale, all of it. The most thing I did was to leave out the things on there that was not pertinent to this lawsuit, such as the curved area and other things like that that have no bearing on this suit."

At that point counsel for petitioner raised objection, his objection at that time was that the plat about which this witness was being asked had not been filed as a qualified exhibit, and objected to it being displayed to the jury. In response to that the Court said:

"Do not display that yet because it is not admissible yet.

"MR. HARRELL: All right. I will turn it the other way. Is this drawn to scale, the old Jackson Highway there, from the state map? (Evidently the jurors were seeing it when the above statements were made)

A—Yes, it's drawn to scale, double in size.

"Q—Double in size. So, it's just involving the land of Mrs. Hill?

A—That's right.

Q—Is the right-of-way drawn to scale, also?

A—Yes, sir.

Q—Now, did you at our request draw some lines adjacent to this, in red and what size; what size are those drawings there?

A—They are 100 by 150 feet, except the irregular ones that are not regular.

Q—Do you know how much acreage?

A—I didn't figure the acreage there but this particular spot here is larger than the other.

Q—All right. That is a scale of one inch to 50 feet; is that right?

A—That's right.

Q—Is this up here the right-of-way where they are building the new road?

A—Yes, it is.

Q—That's exactly the width; 150 feet?

A—That's right.

Q—Have you drawn lines in there every 100 feet?

A—That's right, exactly."

At that point counsel for the petitioner again objected on the ground that this type of evidence was not competent. The Court then remarked:

"It's not competent at this time but he has identified it."

Then he was asked:

"Q—(By Mr. Harrell) Now, does this show a close-up view of where the chain, or the fence goes?

A—Yes, sir, as shown on the State Highway drawings.

Q—Is it a duplicate of this big one right here?

A—Yes, sir.

Q—Except it is so much larger?

A—So that you can see it better.

Q—All right.

A—Except this is in red where I showed those lots.

Q—You marked off certain dimensions there?

A—Certain dimensions.

Q—That's right, and they are the same, except they are not marked off on this map?

A—That's right."

Direct examination ceased and counsel for petitioner then asked:

"Q—You prepared that as an engineer for the purposes of this trial?

A—That's right."

At that point the witness was excused. The respondent introduced Mr. Ed Hamilton as a witness and he was asked the value of the land taken and he said $3600.00, but before he answered that he requested and

was granted permission to refer to his notes. He was then asked by counsel for respondent:

"Q—All right, sir. Have you also, at our request, made a detailed study of the location of the rest of the property?

A—Yes, sir.

Q—In your opinion, does the erection of that highway and where the blueprint shows that they are fixing it you are familiar with, does that increase or decrease the value of the remaining property?

A—Well, I give quite a bit of thought to that and I come up with this answer: That the benefits derived from the bypass is offset by the damage done to the other property, where one cancels out the other, according to my judgment.

Q—All the way around?

A—All the way around. I mean, from the Jackson Road back.

Q—That's what I'm talking about. In other words, how much incidental damage do you figure?"

There was an objection on the ground that he had already stated none; that the benefits cancelled the damage and vice versa. At that point the Court said:

"My understanding is that he answered it. I understood him to answer it. I thought he said that they offset each other."

Some explanation was made by counsel for the landowner who also requested permission of the Court to proceed with the cross-examination, and to that request the Court said: "Go ahead and develop it further." There

was an objection and there were statements made by the witness, by the Court, and at that point counsel for the landowner said:

"If you will let him answer, I think it will clear itself.

A—Gentlemen, I have got to go back and establish the cost of that land, in my judgment, before the state comes out there and, in order to do that, I had to draw a diagram to see how many lots she had up and down adjoining the Jackson Road."

Objection was then made to the Court, but no ruling, evidently because the reason for the objection was not stated, and the witness continued to answer:

"A—I done that. I estimated what I thought those lots was worth as is, then, I figured the land taken. Then, I figured the incidental damages to five lots. They have taken two in their right-of-way and that leaves five.

"Incidental damage I figured to the five lots and, then, I have got incidental damage to the barn and the fence. Also, they have got a small salvage value there in the barn. Now, that's the way I arrived at my figures."

After some discussion of objection continued, the Court said:

"Mr. Hamilton, did I understand you to say that you figured there were some incidental damages but that the incidental benefits evened it out?

"THE WITNESS: The five lots—there are five lots beyond the steel fences that are damaged. They have

got five lots in this right-of-way and one will counteract the other there. Do you get what I mean, Judge,

THE COURT: Not exactly.

"MR. HARRELL: Where is your map? Can't you use it?

THE WITNESS: (Apparently looking at map). The northeast part of her land up there, after you leave one lot depth from the Jackson Road—all of the damage is down here on the Jackson Road, as I said, but I had to establish what I would have give for the seven lots up and down the Jackson Road up until the state come. That's the only way I could assess the value of the land.

"Q—All right. What was the value of it?

A—$7,000."

The examination continued, and the witness continued to talk about the lots and it is obvious that he did testify there was incidental damage to the fences and the barn of $1,500, less a salvage of $300.00 or a net of $1,200. Then he was asked:

"Q—Now if I understand you correctly, you figure the value of the land that was actually taken at $3600.

A—That's right.

Q—You value the incidental damages to the property along the old Jackson Road at $7,000?

A—That's right.

Q—You value the incidental damages to this barn of $1200; barn and fence.

A—Right."

The witness, in his effort to make himself understood, which is hard to do even looking at what he said on paper, that compiles record and finally he was asked by counsel who had introduced him:

"Q—Mr. Hamilton, did you draw a drawing of that out there, you say, where you could explain it to the Jury a little better?

A—Yes. I had to determine the price of what the property was worth before it was bothered by the state."

There was another objection, and at that time the Court said:

"I'm going to sustain the objection, Mr. Harrell." In the apparent confusion from questions and objections being made, the witness finally said:

"THE WITNESS: It's in a residential zone. I forget what zone the City Ordinance sets out but it's R-1 or B-1 or 2. That is residential. I know that much because I am building across the road.

Q—(By Mr. Harrell) It's R-1?

A—I wouldn't want to be positive about that. They have got so many zones I'm a little bit confused on them."

Evidently some reference to the map was made and this question asked:

"Q—Are your values here commensurate with the values there—"

So finally in the argument the witness kept talking and it is very plain he had fixed the value of the land taken, according to his idea about values of the lots as it had

been platted for subdivision purposes before the decision of the State to take it. Associate counsel for property owners came into the argument and there followed much argument relative to the admissibility of the estimates by the witness, and counsel for the petitioner was cross examining this witness and the attention of the witness was called to his quoted answer about incidental benefits and incidental damages, and what he meant by that, and his answer was:

"A—I meant just exactly what I said. After you leave the Jackson Road, is exactly what I meant."

Then he said there had been no development at that time and that there was no subdivision, and made this statement: "My price was based on undeveloped lots."

This witness went into what he had done himself, about how he had developed certain property and how same had been cut up into 50 lots; that he had checked his own files and things of that character to give his testimony in the case.

If that was the only witness which had been introduced, certainly from what this man said his testimony would have been completely incompetent because it clearly shows it was all based on question of lots along the Old Jackson Road. At one point in his examination in his statement he said:

"You are talking to a man that knows something about developing subdivisions, Mr. Senter and that's the reason they've got me up here."

As we view Mr. Hamilton's evidence it falls into the same category which the Supreme Court, speaking through Justice Burnett, had said was incompetent.

We have shown what the other witnesses have said with respect to value of the land. The land value verdict as reduced by the remittitur is only $706.00 more than that fixed by the witnesses for the petitioner in their testimony.

In the case of Davidson County Board of Education v. First American National Bank, supra, the jury had found that all incidental damage was offset by the incidental benefit, which Justice Burnett gave considerable attention to, particularly on the petition to rehear. In the original opinion he had said:

"The jury had before them complete evidence in the taking and the consequences of such taking. They had drawings, photographs and the opinions of some three or four real estate men for their analysis and consideration. The jury, apparently by their verdict did not accept any particular expert's theory but they took the whole thing as offered by both sides and using their own judgment on such things as well as the evidence introduced and from this arrived at their verdict.

"* * * the fact that the jury are supposed to be sensible men and had experience and they were entitled to take this experience into consideration in evaluating the evidence of these various witnesses. By thus doing so there was ample evidence to support the jury in its conclusion that the incidental benefits offset the incidental damages and then they fixed as they were instructed to by the court the full value of the land taken as of $35,000."

That is exactly what we have in this case before us. Though Mr. Hamilton not only cancels out his own statements with regard to incidental benefits and incidental

damages, but we think his testimony is all incompetent and the Court should have so held, but in the light of all the evidence did the fact that the Court did not so hold affirmatively affect the verdict?

It is obvious from this record that the trial Court agreed with the verdict of the jury respecting incidental benefits and incidental damages, and that the damages exceeded the incidental benefits by the amount as shown by the jury verdict of $6,500, and as the 13th juror he agreed with that particular statement as set out in that verdict.

Now as a 13th juror he evidently did not agree with the value of the land taken as fixed by the jury. Had he done so, he would have approved the value for that land taken as fixed by the jury.

 We have said many times, as well as the Supreme Court, in our published opinions and in the opinions which we have not seen fit to publish, that a jury is the first authority or as a general rule, is the best authority to fix the value of property condemned for public purposes, and the trial Court is the next best. It has been said time and time again that we, as an Appellate Court, ought not to interfere with these particular values so long as we feel that the conscience of the Court would not be shocked to approve them. It seems however, that in accord with the Davidson County Board of Education v. First American National Bank opinion, the Court is to measure its conscience by whether the verdict is "all out of line". We do feel that the trial Court felt the land values by the jury verdict to be all out of line and could not conscientiously agree with it, and exercised his right to order a remittitur rather than grant a new trial, we think we ought not to interfere with his judgment in that

regard. Thus we overrule assignments of error One and Two and each part of them, having approved the remittitur made by the trial Court. We also overrule the assignment of error by the property owner.

■ As to assignments of error Nos. Three and Five, we likewise overrule. We know of no case of rule or law, nor has our attention been called to same, that requires the jury to set out specific dollars of special or incidental benefits and specific dollars of incidental damages and subtract the amount of incidental benefits from the amount of the total incidental damages, in fixing its verdict of incidental damages. We think that if witnesses in their proof, stated such in that manner, the jury might also report its verdict the same way, but we find no case which requires such, and therefore, overrule said assignments.

■ We have settled the matter of assignment of error No. Four by saying the evidence of the witness Hamilton is not competent for reasons already assigned and this assignment is sustained, but we think there is other competent evidence to support the verdict of the jury and that his evidence did not prejudicially influence the jurors.

■ Assignment of error No. Six is levelled at the action of the Court in charging Special Request No. 1 of the defendants, which request is copied hereinafter. This is no more than the Court had said, in substance, in his general charge and if it could be error, it would have to be based upon too much emphasis upon the elements which the Court had in mind that composed incidental damages. In the first place, we do not think it was necessary to charge that particular special request, but certainly it is not an overemphasis of the elements to be

taken into consideration in fixing the amount of incidental damages. An examination of that special request shows it is made up of verbiage carried into different opinions heretofore delivered by the Court of Appeals and Supreme Court in several cases.

Assignments of error Nos. Seven, Eight, Nine and Ten are levelled at the action of the Court in refusing to charge petitioner's Special Requests, 1, 2, 3 and 4 respectively. These special requests we think, are incorporated substantially in the general charge, the substance of which is shown on page 224 of this opinion.

In dealing with these assignments it is proper just to show here what the Court did charge. After the Court told the jury there were only two issues for them to determine, one of which was the fair market value of the land taken and the other was whether or not there were incidental damages to exceed incidental benefits. In telling the jury how to determine the fair market value, he said:

"The fair market value, gentlemen, simply means that price which would likely have been placed on the property by a reasonable, prudent prospective purchaser who wanted to buy the property, but did not have to buy, and a reasonable, prudent owner who was willing to sell the property, but was not under circumstances of distress and did not have to sell the property.

"It is, therefore, your duty to fix the value of the piece of land that was actually taken; that is, 3.53 acres; on the date the same was taken. That was in July, 1963.

"In arriving at the fair market value the State must not be regarded as the wrongdoer. The fair market value, gentlemen, simply means that price which would

likely have been placed on the property by a reasonable, prudent prospective purchaser who wanted to buy the property, but did not have to buy, and a reasonable, prudent owner who was willing to sell the property, but was not under circumstances of distress and did not have to sell the property. * * *

"Now in estimating the value of the land taken, all of its legitimate uses and purposes, its adaptability, its desirability for building purposes, its location as to neighborhood or community, its distance from town, and all of the advantages and capable uses of the property are to be considered, as well as all of the disadvantages, if any, in arriving at the value of the land taken; that is, the 3.53 acres. You will not consider the purpose or purposes for which the land was taken by the State and you must not consider the disadvantages, if any, which may arise from the taking and using of same for the roadway, which may result to the remainder of the property, because such damages would be incidental to the remainder of the property, and this will be considered by you on the question of incidental damages only. In other words, gentlemen, to make it as clear as I know how to you, you first will determine the actual fair market value of the 3.53 acres actually taken. That will be the first part of your verdict. * * *"

With reference to incidental damage and explaining what it was, the Court said:

"You will determine if there are any incidental damages to the remainder of the property that was not taken, and in determining this you first determine the incidental damages, if any, and then you determine if there are any incidental benefits, and if there are any

incidental benefits you subtract them from the incidental damages, and that will be the second part of your verdict. * * *

"In determining this question of incidental damages to the remainder of the land, everything necessarily connected with and directly and proximately resulting from the taking of a part of the land of Mrs. Hill, and the proper and careful use of the same for the purposes intended which has the effect of directly and proximately reducing and impairing the value of the remainder of the land, can be considered by you.

"In determining incidental damages you may take into consideration the shape and size of the remaining part of the property, its accessibility to the street or highway, how its usefulness has been impaired or affected, whether its adaptability has .been changed, whether it has affected the accessibility, grading, drainage or any other elements affecting adversely the remainder of the property not taken.

"On the question of incidental benefits, if any, the burden of proof is upon the State of Tennessee, the Petitioner in this case, to show incidental benefits derived by the landowner to the remainder of the property, and it must show that by a greater weight of the proof."

After the Court then had charged the jury with respect to the weight of the evidence, which you usually find in a general charge, he was presented with Special Request No. 5 by the State and he charged that as follows:

"Gentlemen of the Jury, I further charge you, as I am requested by the Petitioner, the State of Tennessee, to do, that the amount of compensation to be awarded

the owner is based on his, or in this case, her economic loss caused by the taking, and although you may consider several and separate elements of damage to the remainder of the tract taken, the total of the amount awarded for the value of the land taken and the damage, if any, to the remainder of the tract should not exceed the difference in the fair market value of the entire tract before the taking and the fair market value of the remainder of the tract after the taking.''

Following that Special Request he then charged the jury Special Request No. One by Mrs. Hill, which is as follows:

"Gentlemen of the jury, I further charge you, as requested by the Defendant, Mrs. Hill, that in considering incidental damages you can consider any benefit or detriment that the construction has on the remainder of the land, including the change, if any, in the flow of traffic at the site of the property, the accessibility or inaccessibility of the remaining property after the construction is completed, the change in the size or shape of the remaining land, any decrease or increase of the possible uses of the remaining land, and any other factors which a willing seller, not compelled to sell and not selling under stress would consider in arriving at a price in connection with a voluntary sale of her property.''

We think that the charge as a whole is rather plain, and while it may not be as elaborate as it might have been with some specific scientific examination of the testimony offered and admitted by the Court, and while we find no particular fault with the special requests offered and attacked by assignments Seven, Eight, Nine and Ten,

we do think the substance of every one of them has been covered in the general charge.

Furthermore, subject to criticism for repetition, we refer to what we have said of the opinion of Justice Burnett in the Davidson County Board of Education v. First American National Bank, supra, that the jurors who tried this case were men of reason, capable of understanding the charge as delivered, and the evidence that the Court had before it that the jury had heard, based upon all of the evidence and the exhibits that were admitted into this record.

We might further point out in giving consideration to the testimony of witnesses Hunt and Putman that a careful examination of what these witnesses said on their direct examination is fully in line with what a respondent is supposed to show in its proof, and that any reference, or at least the first reference made by them to the capabilities as represented by lots in a subdivision along the Old Jackson Road was brought out on cross-examination, and thereafter some re-direct examination based upon that which had been brought forth on the cross examination.

█ Certainly the refusal of the Court to charge these special requests tendered by the State and his charge of the one special request offered by the defendant, do not furnish this Court with grounds to affirmatively find that they adversely affected the rights of petitioner or affected the verdict of the jury. T.C.A. 27-116, 27-117.

Furthermore, see Kneeland v. Bruce, 47 Tenn.App. 136, 336 S.W.2d 319; Lawing v. Johnson, 49 Tenn.App. 403, 355 S.W.2d 465; and Brinkley v. Gallahar, 50 Tenn.App. 129, 359 S.W.2d 857.

The result is that all assignments of both appellants are overruled, the Court being fully satisfied the trial Court exercised reasonable discretion in granting the remittitur, and the judgment as rendered below is affirmed.

Since each of the parties appealed and have accumulated respectively certain costs, it is our opinion the appellant, State of Tennessee, will be taxed with two-thirds of the cost and the appellant, Mrs. Otto Hill, will be taxed with one-third of the cost in this Court, and petitioner with all cost in the trial Court.

Judgment will be entered as provided by law with interest on the difference between the amount deposited with the Court at the time the petition was filed and the amount fixed by appraisers as paid into Court.

Carney and Bejach. JJ., concur.