DAVID M. PACK, Commissioner of Highways and Public Works of the State of Tennessee, Appellant, v. JACK M. BOYER and wife CATHERINE BOYER, Appellees. —438 S.W.2d 754.

Middle Section. October 25, 1968.

Certiorari Denied by Supreme Court March 3, 1969.

142

George M. McCanless, Attorney General, Lurton Goodpasture, Assistant Attorney General, Nashville, H. J. Garrett, Manchester, for appellant.

John M. McCord, of Henry, McCord, Forrester & Richardson, Tullahoma, for appellees.

PURYEAR, J. This is a condemnation suit in which the Commissioner of Highways and Public Works of the State of Tennessee, in his official capacity, filed a petition to condemn .37 of an acre of land owned by the appellees, Jack M. Boyer and wife Catherine Boyer, in the Sixth Civil District of Coffee County, Tennessee.

The petition alleges that the property is condemned for the following purposes:

"3. That said Department of Highways and Public Works is about to begin the construction of a public Highway in Coffee County, Tennessee, beginning at Station 2151 + 38 and extending to Station 2646 + 26 being a part of Interstate Highway No. 1-24-2-(28)-103.

4. That in order to construct said above-described section of Highway it is necessary that a part of the above-described tract of land belonging to the Defendants be used as a right-of-way." (Tec. Rec. p. 2)

This petition was filed pursuant to Chapter 216, Public Acts of 1959, (T.C.A. sec. 23-1528 et seq) and it is alleged therein that the Commissioner determined the fair market value of the property taken and incidental damages to the remaining property by the reason of such taking and deposited the amount so determined with the Clerk of the Circuit Court of Coffee County, Tennessee.

The record shows that the amount so determined by the Commissioner and deposited was the sum of $1,500.00.

The landowners excepted to such determination and requested a trial by jury to determine the amount due them for the taking of their land and incidental damages to remaining lands.

The case was then tried on the 18th and 19th days of October, 1967, before the Honorable Wallace J. Smith, Special Judge, and a jury, as a result of which the jury found the value of the land taken to be $500.00 and incidental damages to remaining land to be $6,500.00, which verdict was approved by the trial Judge and judgment was entered accordingly.

The Commissioner filed a motion for new trial, which was overruled, and the Commissioner has prayed and perfected an appeal in error to this Court.

Eight assignments of error have been filed and we will consider the first four as a group, with the exception, however, of assignment number two, which is to the effect that the verdict and judgment are contrary to the weight and preponderance of the evidence.

We must overrule this assignment, since the verdict has been approved by the trial Judge and we cannot weigh the evidence for the purpose of determining where the preponderance thereof lies. Jones v. Noel, 30 Tenn. App. 184, 204 S.W.2d 336; Atlantic Ice and Coal Co. v. Cameron, 19 Tenn.App. 675, 94 S.W.2d 72.

In assignment number one, it is insisted there is no evidence to sustain the verdict. In assignments three and four it is insisted that the verdict is excessive, both as to the value of land taken and as to incidental damages.

Over objection of Commissioner's counsel, the trial Judge allowed the landowners to introduce, as evidence

of incidental damages, testimony to the effect that a high fill or embankment, was constructed in order to raise the grade level of State Highway 55, which the landowners contend is unsightly, obstructs the view of the landscape and the house located on their remaining land, thereby materially decreasing the market value of their remaining land.

It is contended by the State that no part of this fill or embankment was constructed on the land involved in this taking and therefore, it was error for the trial Judge to allow such evidence to be introduced and to be considered by the jury.

It is the action of the trial Judge in allowing this evidence regarding the alleged damage to the landowners' remaining property by reason of construction of such fill or embankment, and the trial Judge's action in allowing the landowners' counsel to mention it in his argument and allowing the jury to consider it as an element of damage, which is made the basis of assignments numbered five, six, seven and eight.

Before the taking, the landowners' property consisted of a tract or parcel of land containing approximately two and one-tenths acres near the town of Manchester, Tennessee, on which there was a brick veneer residence located. This property was located near State Highway No. 55 at a point near the place where said State Highway No. 55 would intersect Interstate Highway No. 24.

The evidence shows that, since Interstate 24 is a controlled access highway, the construction thereof at this particular place required raising of the grade level of State Highway No. 55 to an elevation of sufficient height

for it to cross over the Interstate by means of an overpass.

In order to provide proper access to the new grade level of State Highway No. 55, another public road, namely Ragsdale Road, had to be relocated at this point and such relocation required the taking of two small parcels of land, one parcel from the northeast corner of landowners' property and another small parcel from the west side thereof, the total area in both of said parcels being thirty-seven one-hundredths of an acre.

This construction project included a high fill or embankment which was necessary to raise State Highway No. 55 to the overpass level and this is the embankment which the landowners contend obstructs the view which they formerly had from their remaining property, and thus makes it less desirable and therefore, of less value.

The evidence shows several other elements of incidental damage to the landowners' remaining property, about which there is no controversy, but the real center of controversy on this appeal is that element of damage which the landowners attribute to the construction of the fill or embankment to raise the grade level of State Highway No. 55, which fill or embankment was not constructed on any portion of the land involved in this taking.

The landowner, Jack M. Boyer, testified that before the taking the entire property had a fair, cash market value of $15,500.00 and after the taking the fair, cash market value thereof was $8,100.00, thus making a difference of $7,400.00 in the before and after value of the property. Of this difference of $7,400.00 he attributed

$500.00 to the value of land taken and $6,900.00 to incidental damages to the remaining land.

Mr. Boyer further testified that the construction, which resulted from the taking of his property, caused a change in the size and shape of the remaining property, a change in the natural flow and drainage of surface water creating a situation where his remaining property was lower by several feet than the roadways surrounding it and, in effect, putting the remaining property down in a hole; that a change in the drainage pattern of surface water to and from the remaining property caused the well thereon to become polluted and the water therein unfit to drink; that because of the construction of the fill or embankment which was made necessary to raise State Highway 55 to the overpass level, the view from his remaining property was obstructed, and that all of these factors caused the value thereof to be greatly diminished.

H. A. Toliver, who is a licensed real estate broker, was a witness for the landowners and he testified that the market value of the entire property before the taking was $15,000.00 and the market value thereof after the taking was $7,500.00, thus making a difference of $7,500.00 in the before and after value of the property to which he attributed $550.00 as the value of land taken and $6,950.00 to incidental damages to the remaining property.

Eldon B. Thoma, a licensed real estate broker, was a witness for the landowners and he testified that the market value of the entire property before taking was $14,000.00 and the market value of the remaining property after taking was $7,900.00, thus making a difference of $6,100.00 in the before and after value of the property, of which he attributed $500.00 as value of the land taken

and $5,600.00 to incidental damages to the remaining property.

Mr. John Hahn, who was the only witness introduced to testify on behalf of the Commissioner on the question of values and damages, testified that the market value of the entire property before the taking was $13,900.00 and the market value of the remaining property after taking was $12,200.00; thus making a difference of $1,700.00 in the value before and after taking, of which he attributed $1,500.00 as the value of land taken and $200.00 as incidental damages to the remaining property.

This witness testified that construction resulting from the taking caused $1,800.00 incidental damages to the remaining property, but also caused $1,600.00 benefits to the remaining property, thus leaving $200.00 net incidental damages.

Mr. Boyer and Mr. Toliver both testified that no incidental benefits accrued to the remaining property as a result of the construction. Mr. Thoma was not asked any direct question about incidental benefits and did not mention any such benefits in his testimony.

There is no interchange to provide access to and exit from the Interstate at this point and therefore, the landowners' remaining property does not derive the benefit which is frequently derived by owners of remaining lands located at or near such an interchange.

■ After reviewing the record, we find there is substantial evidence to support the verdict of the jury, both as to the value of the land taken and incidental damages to the remaining land. In Davidson County Board of Education v. First American National Bank, Trustee,

202 Tenn. 9, 301 S.W.2d 905 (1956), the Supreme Court said:

"In a condemnation case the amount to be allowed or fixed for incidental damages or incidental benefits and the amount to be allowed for the actual value of the property taken is peculiarly within the province of the jury, and unless the same be shown to be so wholly unfair and unreasonable, this Court will not interfere with the verdict of the jury." Dav. Co. Bd. Ed. v. 1st Am. Na. Bk., supra, p. 22, 301 S.W.2d, p. 911.

The above stated rule was reiterated by this Court in State ex rel. Pack v. Hill, 56 Tenn.App. 410, 408 S.W.2d 213 (1965) in the following language:

"It has been said time and time again that we, as an Appellate Court, ought not to interfere with these particular values so long as we feel that the conscience of the Court would not be shocked to approve them." State ex. rel. Pack v. Hill, supra, p. 223 of 408 S.W.2d.

Therefore, we respectfully overrule assignments numbered one, three and four.

■ In assignment of error number eight, the Commissioner assails the action of the trial Court in allowing the landowner, Mr. Boyer, to testify on rebuttal that the embankment constructed in raising the level of Highway 55 blocked his view and in allowing him to introduce a photograph thereof, since this was evidence in chief and not proper as rebuttal.

■ The matter of allowing testimony in chief to be introduced as rebuttal is one which rests within the sound discretion of the trial Judge and does not constitute reversible error in the absence of a showing that

such discretion was abused. Kidd v. Condry, 25 Tenn. App. 182, 154 S.W.2d 530; Long v. Tomlin, 22 Tenn.App. 607, 125 S.W.2d 171.

The alleged incompetency of this evidence is also made the basis of assignment of error number seven and, as we have heretofore stated, the real question to be determined in passing upon assignments numbered five, six, seven and eight is whether or not the construction of the embankment to raise the grade level of Highway 55, so as to overpass Interstate 24, is an element of incidental damage which could be properly considered in this case.

Counsel for the Commissioner cite L. & N. Railroad v. Dudley, 161 Tenn. 546, 30 S.W.2d 278, wherein the Supreme Court said the general rule for assessment of incidental damages is that the injuries to the residue of the tract, part of which is taken, which will entitle the owner to compensation, are such as especially affect him and not such as are suffered by the community generally. However, the Court added this:

"The rule is extended upon facts proven and which show that exceptional circumstances attend the taking and use of the land which impair the value of the remainder, and so, if the use of the part taken is attended by peculiar facts and circumstances, that result in special injury to the remainder of the land, the fact that such special injury is common to all property in the community would not exclude consideration of the special injury as an element to be considered in assessing the incidental damages." L. & N. R. R. Co. v. Dudley, supra, p. 551, 30 S.W.2d p. 280.

The evidence in the instant case convinces us that such exceptional circumstances are present in the case, so as to bring it within the above stated extension of the rule.

In State v. Rascoe, 181 Tenn. 43, 178 S.W.2d 392 (1943) the Supreme Court said:

"Owners of land, no part of which has been taken for public purposes, are not entitled to compensation for damages naturally and unavoidably resulting from the careful construction and operation of the public improvement which damages are shared generally by owners whose lands lie within the range of the inconveniences necessarily attending that improvement. On the contrary, owners of land, part of which is taken for the public improvement, are entitled to such damages so accruing to the remainder of the land. In the first instance damages are assessed as for a legal injury—as though the action were one ex delicto. In the second instance the owner of the land is treated as one offering it for sale at a fair price and the condemner is treated as an intending buyer, neither party being under any stress which would force the sale or the purchase. As the seller in such a transaction would take into consideration damage to the remainder of his land in selling part thereof, so the law in fixing his compensation bases his damage on the same consideration." State v. Rascoe, supra, pp. 52, 53, 178 S.W.2d p. 395.

In State v. Rascoe, the Supreme Court cited the Dudley case and quoted therefrom.

█ The relocation of Ragsdale Road across landowners' property and raising the grade level of State Highway No. 55 at this particular place, so as to bring the latter mentioned highway to the necessary overpass level all constituted a single public improvement project.

Each facet of such relocation of Ragsdale Road and raising of the grade level of State Highway No. 55 are

interwoven with and interrelated to every other facet thereof at this particular location in such a manner that no part thereof can logically be separated from any other part thereof for the purpose of ascertaining incidental damages to the landowners' remaining property.

The foregoing conclusion is supported in part, by the following testimony of Mr. Marion Williams, State Highway Engineer:

"Q. Mr. Williams, this property of Mr. and Mrs. Boyer was taken for a part of the construction of the interstate highway, I-24, wasn't it?

A. Yes, sir.

Q. That's a part of it, isn't it?

A. Yes.

Q. And I understood you to testify on direct examination that the reason for the taking of this property was that it was a part of the Federal Interstate Highway Project I-24, so and so, which is coming across Coffee county, sir?

A. Yes, sir.

Q. Now, this part was not actually in the taking of Mr. and Mrs. Boyer, it is not actually in the interstate right of way itself, is it?

A. No, sir.

Q. But it had to be taken in the State's judgment and the judgment of the Federal Government to construct and build this interstate highway?

A. Yes, sir, for the overpass.

Q. That's right.

Q. Highway 41 as it came from McMinnville traveling Southwest * * *

A. Highway #55 * * *

Q. Excuse me, Highway #55; I keep saying #41; Highway #55 as it came to McMinnville to Manchester before the taking, before any changes was made, was on level land with the rest of this property, is that right?

A. Approximately.

Q. And for the construction of the Federal Interstate Highway, though the right of way of 41 you say wasn't changed. The elevation was changed, was it not, sir?

A. Fifty five, yes sir.

Q. Fifty five. I will quit saying it in a minute, maybe. Highway #55 is what we are talking about. The elevation of that highway had to be changed to construct the interstate highway, didn't it?

A. Yes, sir.

Q. And in making the necessary changes to do that you had to take, and did take, a part of Mr. and Mrs. Boyer's property?

A. Correct." (B. of E. pp. 60, 61, 62)

█ The reported decisions involving the perplexing question presented here are, by no means, harmonious and therefore, no inflexible rule can be followed in fixing incidental damages in a case such as the one now before us, but each case of this nature must rest upon the facts and circumstances of that particular case.

We have concluded that both the Commissioner and the landowners have had a fair and impartial trial and we are satisfied with the result thereof.

For the foregoing reasons we overrule assignments numbered five, six, seven and eight.

All of the assignments of error having been considered and overruled, the judgment of the trial Court is affirmed. The costs of this appeal will be paid by the appellant.

Shriver, P.J. (M.S.), and Todd, J., concur.