## TURNPIKE CO. *v.* DAVIDSON COUNTY.

### (*Nashville.* March 1, 1892.)

1. TURNPIKE COMPANIES. *Charter rights of, not violated by creation of new roads and bridges, when.*

The obligation of the charter contract, whereby a turnpike company is authorized to exact tolls from persons passing over its road and through its gates, is not impaired or violated, within the prohibition of the constitution, by the action of the County Court creating new public roads and bridges, the necessary effect of which is to divert travel from the turnpike and seriously reduce the company's revenues, provided the new roads and bridges are not, in intent and effect, mere shun-pikes, but reasonably essential to the public convenience; and, provided further, they are not located within territorial limits exclusively devoted to the turnpike company by a reasonable and valid provision of its charter.

Constitution construed: Art. I., § 20.

2. SAME. *Impairment of franchises by lawful creation of new roads and bridges not a taking of property.*

And the impairment of a turnpike company's franchises and revenues by such lawful creation of public roads and bridges does not constitute such taking of its property for public uses as will render the county liable for damages thus inflicted.

Constitution construed: Art. I., § 21.

Cases cited and approved: Turnpike Co. *v.* Maury County, 8 Hum., 342; Moses *v.* Sanford, 11 Lea, 731; Levisay *v.* Delp, 9 Bax., 415; 11 Pet., 548; 1 Black, 380; 3 Wall., 75, 210; 15 Wall., 512.

3. SAME. *Necessary public roads are not shun-pikes.*

Public roads and bridges demanded by the general convenience, and created to subserve that end, are not shun-pikes, although they may

incidentally afford the means of passing around the gates of a turnpike company and evading the payment of tolls.

Cases cited: Nashville Bridge Co. *v.* Shelby, 10 Yer., 280; Turnpike Co. *v.* Maury County, 8 Hum., 350.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. ANDREW ALLISON, Ch.

DEMOSS & MALONE for Turnpike Co.

ANDREW J. CALDWELL and EAST & FOGG for Davidson County.

LEA, J. The city of Nashville is located upon the south bank of the Cumberland River, and within the bend of the river. From the opposite side the city is approached by two turnpikes which operated ferries across the river. The complainant company crossed the river about three miles below the city, and the other nearer the center of the bend. The complainant company had its toll-gate for a number of years at a point about two miles from Nashville, but in 1877 moved the same to the river, and there collected toll and ferriage at the same place.

In 1885 the citizens living in certain districts of the county across the river petitioned the

County Court to erect a bridge over Cumberland River, setting forth the growing necessity for the accommodation of that community, and that in high . water the turnpikes could not be traveled; that the boats at the ferries did not run in high waters, and at no time after sundown. Committees were appointed to petition the County Court, and represent the necessity of the bridge. Committees were appointed by the Court to investigate and report. Authority was obtained from Con · gress to erect a bridge over the river. Finally, the county determined to build the bridge, and appointed a committee to locate it and superintend its construction, and appropriated for its erection $100,000. It was located about two-thirds of a mile above the ferry of complainant. It was commenced in 1887, and finished ·in 1889, costing the county about $124,000, including the approaches, when completed. The approach to the bridge on the north side was extended through the bottom up to complainant's road, intersecting it about one mile from the bridge. On the south side the Court opened and ordered opened a road, extending about one mile to the Jewish Cemetery, toward Nashville. The natural result of opening this free bridge was to divert travel from complainant's turnpike.

Thereupon, this bill was filed by complainant, alleging that by such action of the county it had lost almost its entire revenues which it was entitled to collect as tolls; that its chartered privi-

leges were not only impaired, but destroyed, and its road virtually confiscated by the county without any compensation. It further alleged that the approach to the bridge on the north side of the river and the parallel road ordered to be opened on the south side were intended to be used by the promoters of the new bridge and the roads as a shun-pike, and preliminary injunction was prayed for and refused by the Chancellor. The allegation of the bill as to the intention to cause shun-pikes was denied in the answer, and it is alleged that the public convenience required the building of the bridge and the approaches thereto.

The proof in this cause conclusively establishes the statement of the answer that the people in the localities reached by complainant's road had for many years greatly needed an outlet to the city and other portions of the county, and especially the twenty-third, twenty-fourth, and twenty-fifth civil districts of the county; that they were practically cut off during high water, and could not at any time cross the river after sundown, and were practically cut off from market. This turnpike run from Nashville to Ashland City, in Cheatham County. It was chartered in 1848. The charter is in the ordinary form of turnpike companies. The grant of franchise is not exclusive. When the grant is not by its express terms exclusive, it cannot be held to be so by implication. 11 Pet., 548. In that case it was said:

" The continued existence of a government would be of no great value, if by implications and presumptions it was disarmed of the powers necessary to accomplish the end of its creation—the functions it was designed to perform transferred to the hands of privileged corporations;" and in that case the United States Supreme Court determined that where a charter for a bridge company does not contain any express contract, that the State would not authorize another bridge to be built to the injury of the corporation—a law empowering another corporation to erect a free bridge so near to the first bridge, as practically to deprive the first corporation of all tolls, is not a law impairing the obligation of any contract.

The principle was settled by this case, and followed in numerous decisions, that when the grant is not by its terms exclusive, the Legislature is not precluded from granting a similar freedom of erecting a rival way or structure, the result of which may be to greatly impair, or even totally destroy, the value of the former grant, and such damage is not a *taking* of the former franchise which entitles its owner to compensation. Lewis on Eminent Domain, 136 and cases cited; 1 Black, 380; 3 Wall., 75–210; 15 Wall., 512; 8 Hum., 342; 11 Lea, 731; 9 Bax., 415.

If any *property* of complainant is taken, compensation must be made, but only for the property actually taken and the damages incidental to the property; but the loss incident to or in deprecia-

tion of the franchise is not to be considered.
*Moses* v. *Sanford*, 11 Lea, 731; Lewis on Eminent
Domain, 484.

The right to take toll for travel over their
road is not impaired or interfered with, and no
part of their road is used as a part of the roads
opened by the county, but it is insisted that there
was a *taking*, in the fact that the road on the
north side leading from the bridge runs into com-
plainant's road, occupies its ditches, and physically
touches the pike.  Its easement is simply, without
forfeiture, made to contribute to a great public
convenience in affording an outlet to the bridge;
no franchise is taken away, and its right of way
is uninjured, and no compensation can be demanded,
for it is not a taking.  But it is insisted that the
building of this bridge and approaches may not be
the impairing of a contract in the absence of such
contract in the charter, yet it is in violation of
constitutional right to permit the County Court
to construct a new road in the same territory
around complainant's toll-gate and ferry, and in
doing so to intersect on the north of the river
with the turnpike, and on the south so extending
the road from the end of the bridge as to inter-
sect with roads leading to the turnpike and inter-
secting same between the gate and the city; that
such is the practical result, and was deliberately
intended to be, by the promoters of the new bridge
road, a shun-pike.

More than once the question of shun-pikes has

been before this Court. In the case of the *Nashville Bridge Company* v. *Shelby*, 10 Yer., 280, it arose under an application of a party who owned the banks on both sides of the river for leave to establish a ferry in competition with the bridge located upon contiguous territory. Judge Reese said the petition was properly refused, and that "the only question for the County Court to determine was whether public convenience made it proper to grant the prayer of the petition."

The case of *Turnpike Company* v. *Maury*, 8 Hum., 350, was an application by the turnpike company to enjoin the county from maintaining as a public road a by-way which it constructed from a point on complainant's road between the first toll-gate and Columbia, close to the gate, around the gate, re-entering the pike on the opposite side of the gate, not far from it, and by which the rights of the company would have been seriously impaired.

The Court held that, as the manifest purpose and necessary result was to establish a shun-pike, and as it appeared the turnpike was a better and shorter road than the county road which took from the company substantial profits, there was consequently no demand for the road as a public convenience; and the action of the County Court was held to be an abuse of its powers. Judge Turley qualifies the whole of his opinion by this: "It is not meant that the Legislature may not charter other public roads for public convenience,

a necessary but indirect consequence of which may be a diminution of travel; but that no such charter could be granted, the only end and purpose of which would be to evade the payment of tolls.''

But it is earnestly insisted that the County Court has opened a road from the south end of the bridge to an old county road known as Beck's Spring Avenue, and this avenue intersects the pike between Tritchler's corner and the ferry, and complainant has been advised by counsel that a gate could be re-established at Tritchler's corner and collect toll of persons traveling to and from the free bridge, but the county has ordered to be opened a road from the point where the bridge road intersects Beck's Spring Avenue to the Jewish Cemetery, which will there intersect with roads leading to the pike south of and between Tritchler's corner and the city, and that said road about to be opened is not for the public convenience, but is a shun-pike. In answer it is only necessary to say that there is no gate at Tritchler's corner. As before stated, the gate was removed from there about fifteen years ago, and whether after such abandonment it could be re-established, it is unnecessary to now determine. There is no gate there, and therefore can be no shun-pike.

From the decisions of the Supreme Court of the United States, and our own Court, the following principles are deducible:

*First.*—The grant of a franchise may be exclusive, or it may be silent in that respect. A toll-

bridge or ferry, or other franchise is often granted with a provision that no other competing bridge, ferry, or turnpike shall be erected within a certain distance above or below the one granted, and this exclusiveness may be limited or unlimited in its duration.

*Second.*—When the grant is not by its terms exclusive, no presumptions or implications will supply the omissions in the grant, and the Legislature is not precluded from granting a similar freedom of erecting a rival way or structure, the result of which may be to greatly impair or even totally destroy the value of a former grant, and such damage is not a *taking* of the former franchise which entitles its owner to compensation.

*Third.*—If any *property* is taken, compensation must be paid, but only for the property actually taken and the damages incidental to the property, but the loss incident to or depreciation of the profits of the franchises is not to be considered.

*Fourth.*—In this State the County Courts are clothed with the powers and duties of laying out and maintaining public roads and highways for the convenience of the general public.

*Fifth.*—That a road cannot be built only for *the purpose and intent* of evading the payment of toll upon a turnpike.

*Sixth.*—That the County Court may erect or open a road when the same is required by *public convenience* or *necessity*, even though the effect of the same is to diminish or destroy the value of a

franchise formerly granted to a bridge, ferry, or turnpike.

Applying these principles to the facts proven in this case, the decree of the Chancellor dismissing complainant's bill is affirmed with costs.