Richard Michael BLEVINS,
Plaintiff–Appellee,

v.

JOHNSON COUNTY, Tennessee,
Defendant–Appellant.

Supreme Court of Tennessee,
at Knoxville.

Feb. 22, 1988.

W.J. Michael Cody, Atty. Gen. & Reporter, Nashville, Roger D. Hyman, Asst. Atty. Gen., Knoxville, Gary C. Shockley (at trial), Baker, Worthington, Crossley, Stansberry & Woolf, Rick J. Bearfield (at trial), Johnson City, for defendant-appellant.

Max E. Wilson, Wilson & Wilson, Mountain City, Lewis Merryman, Elizabethton, for plaintiff-appellee.

OPINION

DROWOTA, Justice.

This inverse condemnation case was brought by Plaintiff, Richard M. Blevins, against Johnson County, Tennessee, Defendant. The suit arose out of the reconstruction of U.S. Highway 421 in Mountain City. The issues presented by the State of Tennessee, which defended Johnson County, are (1) whether any taking has occurred when the State has exercised its police powers within the boundaries of property already owned by it, and (2) whether Plaintiff is estopped by the recital in the deed from his immediate predecessor-in-title to the State by which the State purchased a portion of the land now owned by Plaintiff for this reconstruction project?

I.

Plaintiff has owned and operated a drive-in restaurant at the same location on Highway 421 in Mountain City since 1978. From 1978 until early 1983, he leased the property on which his restaurant, Mike's Bar–B–Q & Sub Shop, is located from the Roark family (collectively referred to as the Roark heirs). This lease agreement was never recorded. The property has an irregular configuration, consisting of about a half acre of land lying on the Northeastern corner of the intersection of U.S. 421 and Crossroads Drive and having a roughly triangular shape. Prior to reconstruction, Crossroads Drive entered the highway at an acute angle from behind the property on which Plaintiff's restaurant is located. The property had a gravel parking lot that abutted the highway and extended along the frontage for more than one hundred feet. No curbs or other obstructions impeded access to Plaintiff's lot prior to about 1984. During this period from 1978 to 1983, U.S. 421 was a two-lane rural highway running from Mountain City in East Tennessee to Boone, North Carolina.

As part of a planned improvement project to widen Highway 421 into five lanes and to build curbs, sidewalks, and drainage control, the State approached the Roark heirs in 1982 about purchasing 538

square feet of the property at the intersection with Crossroads Drive. On August 9, 1982, Mr. Kelly A. Glandon, an employee of the State Department of Transportation, met with a representative of the Roark heirs, Mr. Harold Roark, to discuss the purchase of this parcel. He provided Mr. Roark copies of maps and plans showing both the area to be purchased and the planned highway improvements; he also gave Mr. Roark a copy of an Agreement to Sell, which included consideration for all incidental damages to the remainder of the Roark tract that was not to be purchased. The State offered the Roark heirs $750 for the parcel and all incidental damages to their remaining property that would flow from the reconstruction of U.S. 421, including the intersection with Crossroads Drive. Part of Plaintiff's barbecue pit was located on this parcel that the State wanted to purchase from the Roark heirs. Mr. Glandon was aware that Plaintiff was a lessee of the property and spoke with Plaintiff on at least one occasion, but because the lease had not been recorded, no release for damages was obtained from Plaintiff, with whom the State did not negotiate and who was told by Mr. Glandon to settle the matter directly with his lessor.

On August 17, 1982, Mr. Roark informed Mr. Glandon that the Roark heirs had agreed to sell the parcel to the State for $750; the Agreement to Sell was signed and dated August 25, 1982. A warranty deed from the Roark heirs to the State of Tennessee conveyed the 538 square foot parcel in fee simple and contained the recital that "[t]he consideration mentioned herein includes payment for any and all incidental damages to the remainder compensable under eminent domain." This deed was dated December 21, 1982, and recorded within ten days of the conveyance. At the top of this warranty deed from the Roark heirs to the State was the highway project number, the county, and tract number. The Roark heirs then paid Plaintiff $200 as the lessee's share of damages to his interest in the land. Shortly after the State consummated its purchase from the Roark heirs, Plaintiff purchased the remainder on which his business was located. By a warranty deed of January 19, 1983, the Roark heirs conveyed the tract in fee simple to Plaintiff for $35,000. The deed contained the following recital:

> "EXCEPTING and RESERVING from the aforesaid tracts or parcels of land are any easements for road rights of way, or conveyances in fee for road rights of way, as may be possessed or heretofore conveyed unto the Town of Mountain City, Tennessee or the State of Tennessee, or any political subdivision thereof...."

This deed was duly recorded on February 11, 1983.

Several months later, as late as Fall 1983, the State commenced reconstruction of U.S. 421 as planned. The reconstruction of this highway was a unified or single public improvement project. The plans provided to the Roark heirs at the time the parcel was purchased by the State in 1982 showed that sidewalks and curbs were to be built, including allowance for two 40 foot business access ramps for the remainder of the tract. Construction on the sidewalks and curbs did not begin until Spring or Summer 1984, about a year and a half after Plaintiff had purchased the Roark property. Before building the curbs, a State engineer consulted Plaintiff about the placement of the two 40 foot access ramps for his property. These sidewalks and curbs were within the State's previously acquired right of way along the frontage of the Plaintiff's property.[1] On June 14, 1984, Plaintiff filed his Complaint for damages on grounds of inverse condemnation, alleging that the State had reduced his unrestricted access along the entire frontage of the property by the construction of curbs and sidewalks. Amending the initial Answer of July 13, 1984, on October 17, 1984, the State asserted the defense of estoppel by deed.

---

1. The acquisition of this right of way apparently predated that of the parcel at the intersection of

U.S. 421 and Crossroads Drive.

The jury trial of this case was held on May 12, 1986. Plaintiff testified that prior to May, 1984, he had about 230 feet of unrestricted access along the frontage of the property on U.S. 421, and that after construction of the sidewalks and curbs, his access was reduced to two 40 foot access ramps. This restriction limited the parking area available to patrons, making some 60 feet of the parking lot inaccessible. Although he was paid $200 by the Roark heirs, the check from the Roarks referred only to the barbecue pit that had been on the parcel sold to the State in 1982. He never discussed any incidental damages to the remainder of the property with the Roark heirs or a State agent and had never seen the construction plans given to the Roarks by Mr. Glandon. He did, however, discuss the placement of the two access ramps with a State engineer before they were built in 1984. Nevertheless, he was generally aware both of the State's planned reconstruction of U.S. 421 and of the negotiations between the State and the Roark heirs. In the course of purchasing the Roark property, Plaintiff read the right of way reservation clause in his warranty deed from the Roark heirs and consulted an attorney about its meaning. His sole claim against Johnson County is for diminution of access.

Two experts testified for Plaintiff concerning the value of his property as affected by the State's construction. One estimated that Plaintiff previously had about 218 feet of unrestricted access along U.S. 421 that had been reduced to 80 feet, limiting his available parking and decreasing the value of the property. The other expert also estimated that Plaintiff had about 218 feet of access prior to the State's installation of curbs and sidewalks, which reduced the access and thus the value of the property.

Mr. Glandon, a State right of way agent for 13 years, testified for the State. He described his usual negotiation procedures and his negotiations with the Roark heirs. Although he did not specifically recall discussing incidental damages with the Roark heirs, he did give them the maps and plans of construction as it related both to the parcel the State wanted to purchase and to the remainder. An incidental damages provision was included in the Agreement to Sell and in the warranty deed. The State also adduced the testimony of an expert property appraiser. He stated that while Plaintiff had over 200 feet of frontage, only 110 feet of that was actually used for unlimited access to the gravel parking lot prior to construction; this access was reduced to 80 feet by the placement of the two 40 foot access ramps where Plaintiff had agreed for them to be located.

The Plaintiff offered some rebuttal evidence regarding incidental damages. At the close of all the proof, the State moved for a directed verdict on grounds of estoppel by deed. The trial court granted this motion, finding that the limitation of access had been within the contemplation of the parties at the time the State purchased the parcel from the Roark heirs and that the recital in this warranty deed was in Plaintiff's chain of title, and thus his right of action had been extinguished by his predecessor-in-title. Judgment was entered on June 4, 1986, and Plaintiff then filed a timely Notice of Appeal. The Court of Appeals reversed the judgment of the trial court because in its view a subsequent taking had occurred when Plaintiff's access was restricted. The incidental damages to the tract purchased by Plaintiff were not within the contemplation of the parties to the deed by which the parcel was conveyed to the State and Plaintiff had no notice from this deed that impairment of access would result from the construction along the highway frontage because the deed contained no apt reference incorporating the planned construction plat. Having granted the State's Application for Permission to Appeal, we now reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

## II.

■ The proposition that the diminution or deprivation of access to private property by the State is a compensable taking hardly requires citation. Rights of ingress and egress have long been recognized by Ten-

nessee courts as property rights for which just compensation is due. *See, e.g., State ex rel. Shaw v. Gorman*, 596 S.W.2d 796, 797 (Tenn.1980); *City of Memphis v. Hood*, 208 Tenn. 319, 324, 345 S.W.2d 887, 889 (1961); *Brooksbank v. Leech*, 206 Tenn. 176, 187, 332 S.W.2d 210, 215 (1959); *Central Realty Co. v. City of Chattanooga*, 169 Tenn. 525, 530, 89 S.W.2d 346, 348 (1936); *Illinois Central Railroad Co. v. Moriarity*, 135 Tenn. 446, 450–453, 186 S.W. 1053, 1053–1054 (1916). Although the State contends that its construction of the curbs and sidewalks was within the police powers, we find it unnecessary to address this issue and merely note the general rule that when a property owner can show special uncompensated damages incident to the State's use of its own property, this Court has almost uniformly rejected the argument that the resulting taking is non-compensable under the police powers in circumstances such as those in this case. *See, e.g., State ex rel. Shaw v. Gorman, supra*, at 797–798; *City of Memphis v. Hood, supra*, 208 Tenn. at 325–327, 345 S.W.2d at 890; *Lewisburg & Northern Railroad Co. v. Dudley*, 161 Tenn. 546, 551–556, 30 S.W.2d 278, 280–281 (1930). Being a general power of the State government, even the police powers can exceed constitutional limitations. An enlightening analysis of the relationship between the police powers and the power of eminent domain is provided by Justice Green in *Illinois Central Railroad Co. v. Moriarity, supra*, and *Knox County v. Kreis*, 145 Tenn. 340, 236 S.W. 1 (1922). *See also, e.g., Martin v. State*, 705 S.W.2d 130 (Tenn. App.1985); *Knox County ex rel. McBee v. Barger*, 576 S.W.2d 1 (Tenn.App.1976); *East Park United Methodist Church v. Washington County*, 567 S.W.2d 768 (Tenn.App.1977); *Spreight v. Lockhart*, 524 S.W.2d 249 (Tenn.App.1975). *Cf. State v. Rascoe*, 181 Tenn. 43, 178 S.W.2d 392 (1944); *Hydes Ferry Turnpike Co. v. Davidson County*, 91 Tenn. 291, 18 S.W. 626 (1892); *Ambrose v. City of Knoxville*, 728 S.W.2d 338 (Tenn.App.1986). Thus the determinative issue for this case is whether Plaintiff is estopped by the recital in the deed from his immediate predecessor-in-title to the State.

The Court of Appeals, in rejecting the trial court's ruling that Plaintiff was estopped by the deed between the Roark heirs and the State, relied on its conclusion that this warranty deed did not incorporate by reference the plat showing the planned construction for the highway and thus Plaintiff lacked constructive notice of the incidental damages to the property he purchased. That Court also reasoned that the incidental damages to which the deed referred were related solely to those resulting from the severance of the parcel purchased from the remainder of the Roark tract and not to the use the State made of land it already had rights to use along the frontage of the property. Even if we were to agree that the warranty deed from the Roark heirs to the State failed to incorporate reference to the State's plans adequately, we cannot agree that Plaintiff lacked sufficient notice. What Plaintiff knew or should have known is determined not only from the constructive notice to be obtained from the title search but also by any other notice that can be attributed to Plaintiff. Furthermore, while an exception to the rule concerning estoppel by deed does exist for those condemnation cases in which the parties did not contemplate the type of damages suffered, the application of the exception permitting a subsequent action for recovery of the damages depends not only on what the parties to the deed contemplated at the time of the conveyance but also on whether the damages would have been so speculative and conjectural that a court would have rejected any proof regarding them in a condemnation action at the time of the taking. Thus two questions emerge for analysis: (1) Whether Plaintiff had sufficient notice of the State's planned reconstruction to work an estoppel, and (2) Whether the kinds of damages suffered by Plaintiff were within the contemplation of the parties to the deed from the Roark heirs to the State?

### A.

Notice is generally said to take two forms, actual or constructive. Construc-

tive notice is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice. "It has been well said that 'constructive notice is the law's substitute for actual notice, intended to protect innocent persons who are about to engage in lawful transactions....' " *Tucker v. American Aviation and General Insurance Co.*, 198 Tenn. 160, 165, 278 S.W.2d 677, 679 (1955) (citation omitted). Nevertheless, "[a]ctual notice must be given in the absence of a statute providing some means for constructive notice." 198 Tenn. at 166, 278 S.W.2d at 680 (citations omitted). Constructive notice encourages diligence in protecting one's rights and prevents fraud. If either no statute requires recordation to create constructive notice or a recordable instrument has not been properly recorded, then actual notice is required to estop a person.

█ While "[i]t is true that recordation creates constructive notice as distinguished from actual notice, in that ordinarily actual notice is when one sees with his eyes that something is done," *Moore v. Cole*, 200 Tenn. 43, 51, 289 S.W.2d 695, 698 (1956), another kind of notice occupying what amounts to a middle ground between constructive notice and actual notice is recognized as inquiry notice. Some authorities classify inquiry notice as a type of constructive notice, but in Tennessee, it has come to be considered as a variant of actual notice. " 'The words "actual notice" do not always mean in law what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.' " *Texas Co. v. Aycock*, 190 Tenn. 16, 27, 227 S.W.2d 41, 46 (1950) (citation omitted). Even a good faith failure to undertake the inquiry is no defense. *Id.*, 190 Tenn. at 28, 227 S.W.2d at 46. Thus, " '[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith.' " *City Finance Co. v. Perry*, 195 Tenn. 81, 84, 257 S.W.2d 1, 2 (1953) (citation omitted).

█ In *Texas Co. v. Aycock, supra*, an unrecorded lease containing an option to purchase the fee was held by the plaintiff; the defendant, a subsequent purchaser of the property, took the conveyance of the fee from the lessor under a deed with a recital referring to the lease. When the plaintiff exercised the option and sued for possession, the Court rejected the assertion that the recital itself created constructive notice of the lease because the lease had not been recorded but, examining all the facts and circumstances, concluded that the reference in the deed to the lease under the circumstances created inquiry notice and thus notice of the contents of the lease itself; defendants were thus bound by the terms of the lease and were required to convey the property to plaintiffs. 190 Tenn. at 28–29, 227 S.W.2d at 46. Consequently, while a person may not be placed on constructive notice due to an inadequate recordation, a recital in a deed may give rise to the necessity to make an inquiry to determine the facts recited or be estopped from asserting a state of affairs different from those that would have been revealed by diligent investigation. This rule controlling inquiry notice is well-established in Tennessee. *See, e.g., Covington v. Anderson*, 84 Tenn. 310 (1886); *Haywood v. Ensley & Haywood*, 27 Tenn. 459 (1847).

*Haywood, supra*, is also instructive for the case under consideration. There, a subsequent purchaser of property took a deed to lands held in trust for another, and although the existence of the trust was not shown on the face of the instrument, the evidence showed that the purchaser had been aware of rumors that the trust was imposed on the land. This knowledge was sufficient to create inquiry notice that the title was not unclouded. The Court observed that "[t]his, if not actual notice, was at least sufficient to have put the defendant upon inquiry; and, in equity, will be regarded as sufficient to bind him; he cannot be allowed to protect himself upon the ground that he intentionally omitted to make inquiry in order to avoid knowledge

of complainant's title." 27 Tenn. at 467. If, on the other hand, no facts appear either from the circumstances surrounding the transaction or on the face of the instrument itself that would give rise to actual or inquiry notice, then the party can be bound only by what can be shown by the constructive notice provided by the recorded instruments in the chain of title. Such a "purchaser of ... property could not be required to look beyond the phraseology of the instrument itself as recorded on the register's books of the county." *Teague v. Sowder,* 121 Tenn. 132, 149, 114 S.W. 484, 489 (1908). *Accord Hill v. U.S. Life Title Insurance Co.,* 731 S.W.2d 910, 912 (Tenn. App.1986), *affirmed* (Tenn.1987) [Available on WESTLAW, 1987 WL 9759]. In *Moore v. Cole, supra,* the Court recognized that the operation of constructive notice differs from that of actual (or inquiry) notice because " 'actual notice binds the conscience of the party; constructive notice, by mere operation of the registry acts, may bind his title, but not his conscience.... The object of registration is to give notice to creditors and subsequent purchasers.' " 200 Tenn. at 51–52, 289 S.W.2d at 698 (citation omitted). Actual or inquiry notice depends on the surrounding circumstances.

■ The type of notice and whether Plaintiff had notice are fundamental to the concept of estoppel. As the Court of Appeals noted in *Duke v. Hopper,* 486 S.W.2d 744, 748 (Tenn.App.1972), "[b]efore a party can claim an estoppel, there must be on the part of the claiming party: (a) lack of knowledge without fault of the true facts, (b) reliance upon the untrue facts, and (c) action based on the untrue statement or misrepresentation." (Citation omitted.) Inquiry notice embodies a concept of fault since failure to undertake diligent investigation will not preclude imputing the knowledge that such an inquiry would have revealed to a party sufficiently aware of any facts or circumstances from which inquiry notice would arise. If such notice does arise, then as in *Haywood, supra,* reliance on any other state of facts than those that would have been discovered by investigation cannot be justified and such a party will be estopped from asserting the existence of any other state of affairs than those that proper inquiry would have revealed.

### B.

■ Notice is an element of estoppel by deed, as it is a form of estoppel, and thus a state of facts described by recitals in a deed can estop assertion of a state of affairs different from those recited. Estoppel by deed is a legal " 'bar which precludes one party to a deed and his privies from asserting as against the other party and his privies any right or title in derogation of the deed or from denying the truth of any material facts asserted in it.' " *Duke v. Hopper, supra,* at 748 (citations omitted). Whatever effect that a recital in a deed in a chain of title would have had on the parties to that deed, it has on the subsequent purchasers as well. Moreover, this estoppel works also against any party who is bound by what was known or should have been known from inquiry notice. As this Court stated in *Teague v. Sowder, supra:*

> "These conveyances, it appears, are all recorded, and these purchasers, of course, were fixed with notice of the recitals of the deeds in their chain of title....
>
> 'It is a familiar principle that every person taking a deed is fixed with notice of all recitals contained in the instruments making his chain of title. The principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deed or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted. If there is sufficient [notice] contained in any deed or record, which a prudent person ought to examine, to produce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the facts so contained.' "

121 Tenn. at 150–151, 114 S.W. at 489 (citation omitted).

The effect of the recitals in these deeds in the present case depends on whether the incidental damages to which the warranty deed from the Roark heirs to the State, as part of Plaintiff's chain of title, include the diminution or deprivation of access that would result from the State's highway construction project. In short, does Plaintiff fall within the exception to the general rule controlling the effect of recitals in deeds:

"[T]he condemnation of a right of way or a right of way by deed embraces by implication all damages necessarily incident to making the land effectual for the particular purpose for which it was acquired. These cases, however, recognize an exception to the rule where the particular loss or damage was not within the contemplation of the owner and, if advanced, would have been rejected as speculative and conjectural."

*Williams v. Southern Railway Co*, 57 Tenn.App. 215, 220, 417 S.W.2d 573, 575 (1966) (citation omitted). This exception is applied when the owner had no notice of any damages to the remainder of the land that would result from the State's taking and use. *Id.* Not only must this Plaintiff's predecessor-in-title have had notice of the incidental damages to the remainder but Plaintiff, as successor-in-title, is bound both by the effect of the recital on his predecessor-in-title and by any actual or inquiry notice that arises from the circumstances surrounding the conveyance from the predecessor-in-title to the successor-in-title. A purchaser cannot be placed on inquiry notice and retain that innocence necessary to be excused by lack of notice upon a subsequent acquisition. In a negotiated taking or in a condemnation suit, the same issue must be resolved as to whether the subsequent damages to the land from which a severance was taken were foreseeable and contemplated by the parties to the deed or to the suit so that the consideration would encompass payment for the injury suffered.

■ Incidental damages are sometimes called "severance damages, i.e., if only a portion of a single tract is taken the owner's compensation for that taking includes any element of value arising out of the relationship of the part taken to the entire tract," *State ex rel. Pack v. Walker,* 220 Tenn. 661, 662–663, 423 S.W.2d 473, 473 (1968), and "[t]he recital in the deed, that the consideration for it is in full of all damages that the grantor may suffer, is an estoppel and a bar against his right later to sue for such damages." *Denny v. Wilson County,* 198 Tenn. 677, 685, 281 S.W.2d 671, 674 (1955). The unanticipated injury exception to the general rule thus depends on what the parties to a taking knew or should have known at the time of the execution of the deed and of what a subsequent purchaser can be said to have adequate notice, but "no inflexible rule can be followed in fixing incidental damages in [such] a case ... each case of this nature must rest upon the facts and circumstances of that particular case." *Pack v. Boyer,* 59 Tenn.App. 141, 153, 438 S.W.2d 754, 760 (1968).

Further, although involving estoppel by judgment, *Carter County v. Street,* 36 Tenn.App. 166, 252 S.W.2d 803 (1952), which entailed a condemnation deed containing a recital regarding incidental damages, stated a principle applicable to the case *sub judice* concerning the burden of showing an estoppel by deed when the owner voluntarily sold property to the State for public use:

"The general rule is that the burden of establishing an estoppel by judgment [or deed] is upon him who invokes it and in cases where the record in the former proceeding leaves it uncertain and a matter of conjecture whether a particular matter was determined the party relying on estoppel must support his plea by proof aluinde."

36 Tenn.App. at 173, 252 S.W.2d at 806 (citations omitted). *See also Williams v. Southern Railway Co., supra,* 57 Tenn. App. at 221, 417 S.W.2d at 575. If, however, the language of an instrument permits the trial court to construe it because only one conclusion can be drawn as to its meaning, then no jury question as to its interpretation is presented. *Carter Coun-*

*ty v. Street, supra,* 36 Tenn.App. at 171, 252 S.W.2d at 806.

## III.

In the case before us, by asserting the defense of estoppel by deed, the burden was on the State to show that the parties contemplated that the consideration paid for the damages included those subsequently suffered by Plaintiff. Plaintiff's grantors, the Roark heirs, negotiated a takings purchase with the State. The State's agent provided the Roark heirs with maps and plans both for the parcel to be severed from the tract and for the entire construction project as it would affect the tract as a whole. While the Roark heir with whom the State dealt was not called by the State to testify and despite the lapse of the State agent's memory regarding the exact scope of the negotiations, the deed between the Roark heirs and the State expansively stated that the consideration paid was "for any and all incidental damages to the remainder compensable under eminent domain." Mr. Glandon, the State agent, believed he would have followed his routine practice in negotiating with the Roark heirs. Clearly, the right to access is compensable under eminent domain. The Roark heirs were aware of the use to which Plaintiff was putting the land at the time of the negotiations and paid him $200 of the $750 they received for the taking, although the check paid to Plaintiff from the Roark heirs was designated simply "for pit" and did not expressly encompass any other damages. To rebut the State's proof, the Plaintiff failed to call the Roark heirs with whom he and the State negotiated their purchases; such evidence would have been allowed in this case.[2] *See, e.g., East Tennessee Natural Gas Co. v. Peltz,* 38 Tenn.App. 100, 127–128, 270 S.W.2d 591, 604 (1954); *Carter County v. Street, supra,* 36 Tenn.App. at 171, 252 S.W.2d at 806. If this were all the evidence the record contained, submission to the jury would have been proper. The State's evidence is undoubtedly weak regarding what was within the contemplation of the parties to the deed between the

Roark heirs and the State, given Mr. Glandon's inability to recall the details of the negotiations and its failure to call the Roark heir with whom the negotiations were conducted, but an inference could be drawn that the grantor had sufficient information from which to foresee that the State planned not only to reconstruct the intersection with Crossroads Drive, where the parcel purchased was located, but to limit access along the entire frontage of the remaining tract. *Cf. Williams v. Southern Railway Co., supra,* 57 Tenn. App. at 221, 417 S.W.2d at 576 (Record devoid of evidence that a predecessor-in-title had knowledge of the plan of construction). The wording of the recital is clearly a release for damages. Nevertheless, the issue in this case is not determined solely from what the parties to the deed between the Roark heirs and the State contemplated but other evidence concerning Plaintiff's own notice must be considered as well.

This is not a case involving an innocent purchaser for value without notice. Plaintiff occupied the land for a number of years prior to his purchase. He was aware that the State planned to reconstruct U.S. 421 along the frontage of the tract. The negotiations between the Roark heirs and the State were generally known to him. He realized that his interest could be affected by the taking and approached or was approached by the State's agent to discuss it. The State referred him to the Roark heirs for any compensation due him because he held an unrecorded lease for the land. Only a short time after the State purchased the parcel from the Roark heirs, Plaintiff purchased the remainder of the Roark tract. The warranty deed from the Roark heirs to Plaintiff specifically reserved and excepted all prior easements and conveyances in fee to the government for rights of way. He consulted an attorney regarding the effect of such reservations in his own deed from the Roark heirs. The deed from the Roark heirs to the State, which is in Plaintiff's chain of title and of which Plaintiff had constructive notice, con-

---

**2.** The trial court commented on the failure of either party to call this witness, noting that the testimony would have been quite useful to the determination of the issue.

tains not only the recital regarding incidental damages but also a notation of the highway project number. Using that number and being aware of the planned reconstruction project, Plaintiff could have and should have discovered the extent to which the highway project was to have affected the property. Plaintiff failed to undertake a diligent investigation, despite having sufficient notice that the highway project was planned along the frontage of the property he purchased. In these circumstances, " '*passive good faith will not serve* to excuse willful ignorance,' " *Texas Co. v. Aycock, supra,* 190 Tenn. at 28, 227 S.W.2d at 46 (citation omitted; emphasis in original), because inquiry notice must be attributed to Plaintiff and thus he was "required ... to inquire into the rights of those with whom [he was] dealing. Here [he] dealt recklessly and under circumstances that should have made [him] pause and investigate. If there is hardship, it was brought about by [his] loose dealing...." *Covington v. Anderson, supra,* 84 Tenn. at 318. *See also Haywood v. Ensley & Haywood, supra,* 27 Tenn. at 467.

Under all the facts and circumstances revealed on this record, we conclude that an estoppel by deed arose and Plaintiff is barred from contesting the truth of the recital in the deed from his predecessor-in-interest to the State both because the damages to the Roark tract caused by the reconstruction of U.S. 421 would have included loss or diminution of access, as such damages are not speculative and conjectural, requiring application of the general rule that " '[a]s the seller in such transaction would take into consideration damage to the remainder of his land in selling part thereof, so the law in fixing his compensation bases his damage on the same consideration,' " *Pack v. Boyer, supra,* 59 Tenn. App. at 151, 438 S.W.2d at 759 (citation omitted), and because Plaintiff had sufficient notice to be required to investigate the extent to which his rights in the land he leased and then purchased had been adversely affected by the State's taking and planned highway project.[3] The unantic-

ipated injury exception cannot be applied in this case. Plaintiff is estopped by the recitals in the deeds as well as by the inquiry notice that arose under all the circumstances. By his own fault he failed to ascertain the facts and was thus not justified in relying on or acting upon any other state of affairs than those reflected in the recitals in the deed, which would have been revealed by investigation and which would have barred his predecessors-in-title from maintaining an action for inverse condemnation.

Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court. The case is remanded for entry of any necessary orders. Costs are taxed to the Plaintiff.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.

---

**3.** Any adverse effect on the value of the land due to the State's reconstruction of U.S. 421

would then have been reflected in the purchase price of the land.