# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 21, 2016 Session

## ANDREA SCOTT ET AL. v. CARLTON J. DITTO ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 11C942      W. Jeffrey Hollingsworth, Judge**

---

### No. E2014-02390-COA-R3-CV-FILED-AUGUST 31, 2016

---

This action involves a dispute between the holders of conflicting claims to the ownership of a residential lot in Chattanooga. The City sold the property at a delinquent tax sale. Unbeknownst to those involved in the tax sale, the property had earlier been sold at a foreclosure sale conducted by the holder of a deed of trust on the property. After a dispute arose between Andrea Scott, who had bought the property from a successor to the purchaser at the *foreclosure sale*, and Carlton J. Ditto, who bought the property at the *tax sale*, Scott filed this action against Ditto and others to quiet title to the property. Ditto filed a counterclaim. He also filed a cross-claim against several of the defendants. The trial court granted Scott summary judgment based on its determination that she was a bona fide purchaser without notice of the tax sale to Ditto and that she had recorded her deed first. The trial court dismissed Ditto's cross-claim. We affirm the trial court's dismissal of the cross-claim against the lender and others, because Ditto does not have standing to challenge the foreclosure sale. With respect to the trial court's grant of summary judgment to Scott, we hold that the evidence presented by Ditto in opposition to summary judgment establishes a genuine issue of material fact as to whether Scott had notice of Ditto's interest in the property prior to her purchase of that property. Accordingly, we vacate the trial court's grant of summary judgment and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part and Affirmed in Part; Case Remanded for Further Proceedings

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Carlton J. Ditto, Chattanooga, Tennessee, appellant, pro se.

Adam U. Holland and Everett L. Hixson, III, Chattanooga, Tennessee, for the appellees, Andrea Scott and the Tennessee Housing and Development Authority.

David W. Houston, IV, and Charles N. Alden, Nashville, Tennessee, for the appellees, CitiMortgage, Inc., and Mortgage Electronic Registration Systems, Inc.

**OPINION**

**I.**

The property at issue is a residence located at 3904 Dixie Circle in Chattanooga. Tamara B. Taff owned the property in 2006. The property taxes due the City for 2006 were not paid. On January 30, 2007, Taff sold the property to Joey R. Sapp, Shannon Elizabeth Sapp, and Ray F. Sapp. Defendant CitiMortgage, Inc. (Lender) financed the purchase, and the Sapps executed a deed of trust in favor of Lender and defendant Mortgage Electronic Registration Systems, Inc. (MERS), which latter entity acted solely as a nominee for Lender. In 2007, the City of Chattanooga filed suit to collect unpaid taxes on the property.

The Sapps defaulted on the deed of trust, and Lender initiated foreclosure proceedings in early 2010. On April 5, 2010, the foreclosure sale took place, and Lender was the high bidder. The same day, Lender and MERS conveyed their interest in the property to the Department of Housing and Urban Development (HUD), executing a trustee's deed in HUD's favor. This deed was executed on April 5, 2010; however, HUD did not record it until August 12, 2010.

At an earlier time, on April 20 and 21, 2010, the City of Chattanooga served notice upon Lender and MERS respectively, notifying them of the pending tax sale of the property. The tax sale occurred on June 3, 2010. Ditto was the high bidder. The Hamilton County Chancery Court entered a decree confirming the tax sale on June 15, 2010, nunc pro tunc to June 3, 2010. Ditto did not record the decree in the Hamilton County register of deeds until June 24, 2011.

On April 20, 2011, HUD sold the property to Scott. Scott recorded her deed on May 19, 2011, some thirty-six days before Ditto recorded the court's tax sale decree. After Ditto sent Scott a letter informing her that it was his position he was the rightful owner of the property, Scott filed the instant lawsuit on July 28, 2011. Her action to quiet title named as defendants Ditto, Lender, MERS, the City of Chattanooga, Hamilton County, and Shaun Donovan, Secretary of HUD. Ditto answered and filed a counterclaim. He coupled it with a cross-claim against Lender, MERS, and the City of Chattanooga. The case was twice removed to federal court, which, on both occasions, remanded the case back to the trial court. While this case was still pending in the federal court, that court entered an order granting Scott's unopposed motion for a voluntary

2

dismissal of her suit against the secretary of HUD. It does not appear that HUD has taken an active part in this litigation.

The trial court granted the motion to dismiss Ditto's cross-claim against Lender and MERS, finding that Ditto had no standing to challenge the foreclosure sale because he was neither a party to, nor a third-party beneficiary of, the contracts underlying the foreclosure. The trial court granted Scott summary judgment on the following bases: that she recorded her deed before Ditto recorded his muniment of title, *i.e.*, the decree confirming the tax sale, and that Scott was a bona fide purchaser of the property without notice of the tax sale or Ditto's claim to the property. *See* Tenn. Code Ann. § 66-26-105 (2015) ("Any instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity . . . that the party claiming under the subsequent instrument had full notice of the previous instrument."). In its final order, the trial court ordered that "to the extent the tax sale vesting title of the property located at 3904 Dixie Circle is invalidated or otherwise set aside by the Order of this Court, the Cross-Defendant City of Chattanooga shall reimburse Defendant Ditto [for monies paid by Ditto at the tax sale] as contemplated by [Tenn. Code Ann.] § 67-5-2504 (a)." Ditto timely filed a notice of appeal.

## II.

Ditto raises the following issues on appeal:

> 1. Whether the trial court erred in granting Scott summary judgment and declaring her the title holder of the property.

> 2. Whether the trial court erred in dismissing Ditto's cross-claim against Lender and MERS based upon an alleged lack of standing to challenge the foreclosure sale.

## III.

Regarding our standard of review of a grant of summary judgment, the Supreme Court has recently opined:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R.

3

Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness.

\* \* \*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015) (emphasis in original).

In determining whether summary judgment is appropriate,

[w]e must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

*Wells Fargo Bank, N.A. v. Lockett*, No. E2013-02186-COA-R3-CV, 2014 WL 1673745, at *2 (Tenn. Ct. App., filed Apr. 24, 2014).

Our standard of review on the issue of whether the trial court correctly dismissed Ditto's cross-claim under Tenn. R. Civ. P. 12.02(6) is as stated by the Supreme Court:

4

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but asserts that the allegations fail to establish a cause of action.

In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal citations, quotation marks and ellipsis omitted).

## IV.

### A.

At its core, this case presents the question of whose claim to title has priority. HUD bought the property first at the foreclosure sale on April 5, 2010, but did not record its deed until August 12, 2010; consequently, the City was unaware of HUD's interest on June 3, when it sold the property at the tax sale to Ditto. Scott later bought the property from HUD on April 20, 2011, but she recorded her deed first, on May 19, 2011. Ditto did not record his judgment confirming the tax sale until June 24, 2011.

Ditto argues that Scott's lawsuit is barred by Tenn. Code Ann. § 67-5-2504(c), which provides that "[n]o suit shall be commenced in any court of the state *to invalidate any tax title to land* until the party suing shall have paid or tendered to the clerk of the court where the suit is brought the amount of the bid and all taxes subsequently accrued." (Emphasis added.) Scott responds that her action is not a suit "to invalidate [a] tax title to land." She has not challenged the validity of the tax sale. Scott's position is that Ditto received valid title to the property at the tax sale, but lost priority by failing to record his interest first. We agree with Scott that, under the facts presented here, Tenn. Code Ann. § 67-5-2504 does not bar her action, because it is not a suit to invalidate a tax title. *See*

5

*State v. Delinquent Taxpayers*, No. W2008-01296-COA-R3-CV, 2009 WL 1211332, at *5 (Tenn. Ct. App., filed May 5, 2009) (observing that "[Tenn. Code Ann. §] 67-5-2504, by its terms, applies to suits to 'invalidate' a tax title, not to every suit that simply affects a tax title"); *Mortgage Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 276-79 (Tenn. 2015) (holding section 67-5-2504(c) inapplicable to an action "to have the tax sale of the property declared void *ab initio* based on lack of constitutionally-required notice").

The trial court held that Tennessee's race notice statute governs the outcome of this case. In *Milledgeville United Methodist Church v. Melton*, 388 S.W.3d 280, 289 (Tenn. Ct. App. 2012), we observed,

> Our race notice statute states:
>
>> Any instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of the court, that the party claiming under the subsequent instrument had full notice of the previous instrument.
>
>> Tenn. Code Ann. § 66–26–105. Therefore, under Tennessee's race notice statute, a first-filed instrument has preference over a later-filed document, even one that was executed first. *Harris v. Buchignani*, 199 Tenn. 105, 113, 285 S.W.2d 108 (Tenn. 1955). This preference is not available, however, where the party claiming under the subsequent instrument had "full notice" of the prior unrecorded one. Tenn. Code Ann. § 66–26–105.

Under *Milledgeville*, Scott's title claim has priority if she is a bona fide purchaser for value, without notice of Ditto's title claim. The Supreme Court addressed the concept of notice in *Blevins v. Johnson County*, 746 S.W.2d 678, 682-83 (Tenn. 1988), stating:

> Notice is generally said to take two forms, actual or constructive. Constructive notice is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice. "It has been well said that 'constructive notice is the law's substitute for

6

actual notice, intended to protect innocent persons who are about to engage in lawful transactions. . . .' " ***Tucker v. American Aviation and General Insurance Co.***, 198 Tenn. 160, 165, 278 S.W.2d 677, 679 (1955) (citation omitted). . . .

While "[i]t is true that recordation creates constructive notice as distinguished from actual notice, in that ordinarily actual notice is when one sees with his eyes that something is done," ***Moore v. Cole***, 200 Tenn. 43, 51, 289 S.W.2d 695, 698 (1956), another kind of notice occupying what amounts to a middle ground between constructive notice and actual notice is recognized as inquiry notice. Some authorities classify inquiry notice as a type of constructive notice, but in Tennessee, it has come to be considered as a variant of actual notice. " 'The words "actual notice" do not always mean in law what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.' " ***Texas Co. v. Aycock***, 190 Tenn. 16, 27, 227 S.W.2d 41, 46 (1950) (citation omitted). Even a good faith failure to undertake the inquiry is no defense. ***Id.***, 190 Tenn. at 28, 227 S.W.2d at 46. Thus, " '[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith.' " ***City Finance Co. v. Perry***, 195 Tenn. 81, 84, 257 S.W.2d 1, 2 (1953) (citation omitted).

*See also* ***Milledgeville United Methodist Church***, 388 S.W.3d at 290 ("record notice is only one of many ways by which a subsequent purchaser may be put on notice of another's interest in land . . . one cannot be a good-faith purchaser if a reasonable investigation of the property would have revealed the existence of a conflicting claim.") (quoting 112 Am. Jur. *Proof of Facts* 3d 419, § 12 (2010)); ***Estate of Darnell v. Fenn***, 303 S.W.3d 269, 279 (Tenn. Ct. App. 2009); ***Holiday Hosp. Franchising, Inc. v. States Res., Inc.***, 232 S.W.3d 41, 48-49 (Tenn. Ct. App. 2006).

Ditto argues that the trial court erred in granting Scott summary judgment because he presented evidence sufficient to raise a genuine issue of material fact as to whether Scott had notice of his claimed interest in the property before buying it from HUD. In his affidavit, Ditto states the following:

> Pursuant to the hereinabove discovery [propounded by Ditto to Scott], Plaintiffs did produce a copy of the Hamilton County Trustee website showing data for the Property as of December 23, 2010 (Exhibit "E"). This document clearly shows myself as the Assessed Owner and lists my deed of acquisition[.]

The exhibit is a printout of a page from the Hamilton County Trustee's website, captioned "property tax inquiry." Significantly, it bears the date of December 23, 2010. "Carlton J. Ditto" is the listed owner of the property. Ditto's affidavit attests that the printout was *provided by Scott herself, or someone on her behalf, in response to his discovery request*. Although Scott testified that she did not have actual or constructive notice of Ditto's alleged interest before she bought the property from HUD, she does not deny that she produced the subject document in response to Ditto's discovery request. We are of the opinion that Ditto has identified a genuine issue of material fact regarding whether Scott had notice of his interest to preclude her status as a bona fide purchaser. A trier of fact could reasonably conclude that, since Scott provided the County Trustee's website printout to Ditto, she had actual knowledge that Ditto was listed as the owner of the property on December 23, 2010, well before she bought it on April 20, 2011.

This Court addressed a similar situation in *Washington Mutual Bank v. N.K.T. Land Acquisitions Inc.*, No. M2007-02040-COA-R3-CV, 2008 WL 2925299, at *9-10 (Tenn. Ct. App., filed July 23, 2008), saying:

> the next question is whether N.K.T. had actual or inquiry notice of the subordination agreement originally entered into between GMAC and NAMCO. . . .
>
> The two letters sent in the first part of 2006 from N.K.T. to Wilson & Associates constitute a considerable hurdle for N.K.T.'s contention that there is no evidence to suggest actual notice of such an agreement. Indeed, the letters alone are sufficient to raise a material question of fact as to the existence of actual notice by N.K.T. at the time the loan was purchased. Although an affidavit from Ms. Tedeschi states that N.K.T. did not have notice of the subordination agreement, N.K.T.'s 2006 correspondence suggests otherwise. . . . [I]t is certainly possible for [the letters] to be understood as indicating that the unrecorded subordination agreement had been discovered prior to the time of the acquisition from GMAC. While these two letters might be

8

explained away at trial, any such explanation could not be accepted by the court on summary judgment.

\* \* \*

Upon remand, then, the finder of fact must determine whether N.K.T. was on notice, be it actual or inquiry, of the fact that the mortgage it was acquiring had been subordinated by a prior agreement. If N.K.T. was on inquiry notice only, then the finder of fact must determine what a reasonable inquiry would have revealed. A reasonable inquiry, however, would not necessarily be limited to what would have been discovered by examining the records of the county's register of deeds. Inquiry notice is not merely constructive notice by another name. It covers those facts that would have been discovered under the circumstances by reasonably diligent actors regardless of whether that information is formally recorded. If the facts here would have reasonably suggested further inquiry and such an inquiry, when undertaken in good faith and with reasonable diligence, would have revealed the subordination of the mortgage to be acquired, then N.K.T. cannot avoid the effects of the subordination agreement simply by arguing that it would not have been found in the records of the register of deeds.

(Footnotes and internal citations omitted.) We similarly vacate summary judgment here and remand for further proceedings.[1]

---

[1] On appeal, Ditto also argues that recent amendments to the statutory scheme governing delinquent tax sales should apply retroactively to defeat Scott's claim. Tenn. Code Ann. § 67-5-2103 was amended effective July 1, 2014 to provide:

(c) The filing of a complaint for the purpose of enforcement of the first [property tax] lien provided for in § 67-5-2101, shall create a lien lis pendens as to each parcel which is included in the proceeding, during the pendency of the proceeding, affecting all subsequent owners, without the recording of any copy or abstract thereof in the office of the register of deeds.

This statute was amended again, effective May 8, 2015, to provide:

(b) All interested persons shall be deemed to have constructive

9

**B.**

Ditto's cross-claim against Lender and MERS alleged that:

> It appears from the complaint that [Lender] and . . . MERS were the owners and holders of a deed of trust executed by Joey R. Sapp, wife Shannon Elizabeth Sapp and Ray F. Sapp[.]
>
> [Lender] and MERS foreclosed this deed of trust on April 5, 2010.
>
> Ditto avers that [Lender] and MERS failed to:
>
> a. properly accelerate the debt as required by paragraph 9 of said deed of trust;
>
> b. properly notify debtors of the pending foreclosure pursuant to the terms of the deed of trust and T.C.A. 35-5-101 et. seq.;
>
> c. properly advertise the foreclosure sale as required by T.C.A. 35-5-101 et. seq.;
>
> d. comply with the terms of paragraph 18 of the deed of trust;
>
> e. properly record an assignment to The Secretary of Housing and Urban Development (HUD);

---

> notice of the proceedings by virtue of the seizure of the parcel occurring upon the filing of a complaint for the purpose of enforcement of the first lien. However, interested persons who do not have an obligation to pay the taxes on the parcel, such as lienholders, need not be joined as parties nor served with process so long as a diligent effort to give actual notice of the proceedings, as defined in § 67-5-2502(c)(1), is made to such persons.

We do not find it appropriate or necessary for us to reach the interpretation or application of these provisions. In the event the trial court determines that Scott did not have notice of Ditto's title, that court can proceed further and address Ditto's position with respect to these statutory provisions.

10

f. tender the high bid in cash as required by the terms and conditions of the deed of trust, the advertised Notice of Sale and the Statute of Frauds;

g. convey the property to the highest and best bidder in that HUD was not present at the foreclosure sale, could not have tendered the highest and best bid and did not tender the high bid in cash as required by the terms and conditions of the deed of trust, the advertised Notice of Sale and the Statute of Frauds.

Ditto avers that these failures violate the terms and conditions of the deed of trust and T.C.A. 35-5-101 et, seq., rendering the foreclosure sale voidable.

(Numbering in original omitted.) The trial court dismissed the cross-claim against Lender and MERS, on the following grounds:

The foreclosure sale took place pursuant to the terms of a note and deed of trust between [Lender] and the three (3) members of the Sapp family. Mr. Ditto was not a party to those contracts. Also, there is nothing [in] Mr. Ditto's cross-claim indicating he was or could be a third party beneficiary to those contracts. As a result, Mr. Ditto has no standing to complain about whether the sale complied with the terms of the contract.

In regard to Mr. Ditto's claim that the sale did not comply with the Tennessee statutes he cites[,] T.C.A. § 35-5-106 provides that: "Should the officer, or other person making the sale proceed to sell without pursuing the provisions of this chapter, the sale shall not, on that account, be either void or voidable." As a result, even if all of the allegations in Mr. Ditto's cross-claim were true, relief could not be granted to him as a matter of law.

We agree with the trial court's judgment, on the grounds stated by the court. Ditto, who was not a party to nor a third-party beneficiary of the contracts between the Sapps and Lender, does not cite any authority supporting a conclusion that he has standing to challenge the foreclosure sale, which took place before he had any involvement with the property.

11

## V.

The judgment of the trial court is vacated in part and affirmed in part. This case is remanded to the trial court for further proceedings, consistent with this opinion. Costs on appeal are assessed one-half to the appellant, Carlton J. Ditto, and one-half to the appellee, Andrea Scott.


_____
CHARLES D. SUSANO, JR., JUDGE